Vol. 279        APRIL TERM, 1919.        535

State ex rel. Peach Co. v. Bonding & Surety Co.

THE STATE at The Relation and To The Use of ELBERTA PEACH & LAND COMPANY, Appellant, v. CHICAGO BONDING & SURETY COMPANY, Appellant.

Division One, October 10, 1919.

1. **RECEIVER:** Suit for Funds Converted by Predecessor: Proper Relator. A receiver appointed under Sec. 2018, R. S. 1909, cannot maintain a suit in his own name against the sureties on the bond of his predecessor; but where the order appointing the original receiver directs him to take possession of the property and with leave of court to bring such suits as shall be necessary to recover the assets, and the same power is given to the successor receiver, with nothing in the record showing an attempt to vest the legal title in either receiver, the suit to recover from the surety on the first receiver's bond for moneys converted or misappropriated, should be brought, not in the name of the successor receiver, but in the name of the company for whom the receiver was appointed.

2. **BOND:** Liability for Funds Converted by Receiver: Deposit in Bank. A bonding company cannot discharge its obligation as surety by pointing out some other person who is also legally liable for a loss. So where a receiver was appointed for an industrial company and authorized to take possession of its assets, including money on deposit to its credit, and defendant as surety executed its bond, obligating itself that the receiver would faithfully and truly account for all moneys, assets and other property that should come into his hands, and thereafter the receiver caused to be transferred on the bank's books to his credit as receiver a deposit previously made to the credit of the industrial company, and thereafter by checks signed by himself as receiver and payable to himself drew out the deposit and converted it to his own use, the bonding company is liable to the company for the amount so misappropriated, and cannot escape payment on the theory that the bank had actual knowledge that the deposit was a trust fund and that the company was the real owner thereof. The legal title of the fund was in the company, but the right to possession after its redeposit was in the receiver, and the bank was bound to pay his checks when in proper form, and therefore the surety must account for the money misappropriated; and although the industrial company, upon a showing that the bank knew that the receiver was converting the fund to his own use and with such knowledge aided him in so doing by honor-

ing his checks, might in a proper proceeding recover from the bank, still the surety must respond upon its guaranty that the receiver would faithfully account for the money and other assets reduced to his possession.

3. **BILL OF EXCEPTIONS: Withdrawn and Another Allowed.** The allowance of a bill of exceptions by the court in term time, like any other act or proceeding, is *in fieri* during the term and can be modified or set aside. So that where a bill of exceptions was allowed and filed on the 17th and then by leave and order of court withdrawn, another approved and ordered filed in open court and actually filed on the 18th and made a part of the record was regular.

4. **VEXATIOUS DELAY: Damages and Attorney's Fees: Suit on Guaranty Bond.** It is true that Section 7068, Revised Statutes 1909, authorizing the recovery of damages and an attorney's fee for vexatious refusal to pay applies only to actions against (1) an insurance company for loss on (2) a policy of insurance; but it embraces policies of "fidelity, indemnity . . . or other insurance," and those words are broad enough to include a company licensed to do "fidelity and surety insurance" for a consideration, and in an action on the judicial bond of such a company by which, for a consideration or premium paid, it guarantees that a receiver appointed by the court will faithfully and truly account for all moneys, assets and other property that may come into his hands, it is proper for the court or jury to allow damages and a reasonable attorney's fee for its vexatious refusal to pay the principal sum converted by the receiver to his own use.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

REVERSED AND REMANDED (*with directions*) as to plaintiff.

AFFIRMED as to defendant.

*Luther Ely Smith* for plaintiff.

1. Defendant is an insurance company engaged in writing insurance contracts. 2 Bouvier's Law Dictionary (3 Ed.), p. 1613; Laws 1885, p. 41; Sec. 6013, R. S. 1879; Sec. 7042, R. S. 1909; 2 R. S. 1879, secs. 5987-6010. (a) Defendant was organized as an insur-

ance company under the laws of Illinois. The act under which it is formed subjects it to the constant supervision of the Insurance Commissioner of Illinois. No agent of defendant may write a single policy for defendant without incurring a penalty, unless he has gained authority to act from the Superintendent of Insurance of Illinois. Laws Illinois 1899, pp. 260-265; 2 Ill. Ann. Stat., secs. 2544-2558, pp. 1610-1614. (b) Defendant is admitted to do business in Missouri as an insurance company. It may do "fidelity and surety insurance" in Missouri and nothing else. (c) Defendant's agent for service of process in Missouri is the Insurance Commission of Missouri. Ill. Laws 1899, p. 263, sec. 10; 2 Ill. Ann. Stat., p. 1613, sec. 2552; 2 Bouvier's Law Dict. (3 Ed.) p. 1614; Sec. 7068, R. S. 1909. (d) Defendant, as a condition of its admission to do business in Missouri, comes in subject to all the insurance provisions of the State affecting companies other than life. (2) The use of the term "bond" instead of the term "policy" is not conclusive. The law looks to the substance, not to the form. Laws 1911, p. 274; Secs. 6997, 7100, 7099, 7068, R. S. 1909; Frost on Guaranty Insurance (2 Ed.), pp. 18, 64 and 621-694; Industrial & General Trust Co. v. Tod, 67 N. Y. Supp. 363; People v. Rose, 174 Ill. 310; People v. Feitner, 166 N. Y. 129; Nye Schneider Fowler Co. v. Bridge Hoye Co., 98 Nebr. 863, 155 N. W. 235; People v. Potts, 264 Ill. 522; U. S. Fid. & Guar. Co. v. Natl. Bk., 233 Ill. 475; Hormel & Co. v. American Bonding Co., 112 Minn. 288, 33 L. R. A. (N. S.) 513; State v. Hogan, 8 N. D. 301, 73 Am. St. 759; American Surety Co. v. Folk, 124 Tenn. 139, 25 Am. & Eng. Ann. (1912D) 1024; First Natl. Bk. v. Fidelity Co., 110 Tenn. 10, 100 Am. St. 765; Roach v. Trust Co., 130 Mo. App. 401; State ex rel. v. Ogden, 172 S. W. 1172. (3) The contract in suit is a contract or policy of insurance within the meaning of the statute. Sec. 7068, R. S. 1909; U. S. Fid. Co. v. Natl. Bk., 233 Ill. 475; Amer. Bonding Co. v. Morrow, 80 Ark. 49; Remington v. Fidelity Co.,

27 Wash. 429; Granite Bldg. Co. v. Saville, 101 Va. 217; Ice Mfg. Co. & C. Co. v. American Bonding & Trust Co., 115 Ky. 863; Willoughby v. Fidelity Co., 16 Okla. 546; Guarantee Co. v. Mechanics Savgs. & Trust Co., 80 Fed. 766; American Credit Indemnity Co. v. Athens Woolen Mills, 92 Fed. 581; American Trust Co. v. Burke, 36 Colo. 49; Frost on Guaranty Insurance (2 Ed.), sec. 243, p. 622. (4) Defendant is estopped to deny its liability to pay the penalties it has deliberately incurred. Sec. 7068, R. S. 1909; Fidelity Mut. Life Assn. v. Mettler, 185 U. S. 308, 326. (5) Vexatious refusal to pay was amply shown. Defendant, without the shadow of excuse, refused to pay one penny upon a $20,000 fidelity policy covering defalcation and embezzlement, when defalcations and embezzlement to the extent of $8036.87 was promptly shown to defendant. On the contrary, defendant relies for its defense upon the fact that the defalcations occurred through checks drawn on a bank that, as defendant contends, ought to have known that the Receiver was in the act of embezzlement when he drew and presented the checks. To describe such conduct on defendant's part as "vexatious refusal to pay" might well be termed flattery. It is the hyperbole of euphemism. R. S. 1909, sec. 7068; Cascarella v. Life Ins. Co., 175 Mo. App. 130; Brown v. Ry. Assurance Co., 45 Mo. 221; Williams v. Ins. Co., 189 Mo. 70; Keller v. Ins. Co., 198 Mo. 440; Fay v. Ins. Co., 268 Mo. 373; Barber v. Ins. Co., 269 Mo. 21; Stix v. Indemnity Co., 175 Mo. App. 180. (6) Ten per cent statutory penalty and attorney's fees should be added to the judgment for vexatious refusal to pay. R. S. 1909, sec. 7068; Laws 1911, p. 282; Cascarella v. Life Ins. Co., 175 Mo. App. 130. (7) Defendant's obligation was direct and primary. It was not discharged, and could not be discharged, except upon the principal's "truly accounting for all moneys, assets, property and effects which should come into his hands and possession, and should in all respects faithfully perform all the official duties of said receiver-

ship." If Haydel did those things, then "this obligation shall be void, otherwise it shall remain in full force and effect." Haydel did not do those things; he did not account for all moneys that came into his hands or possession. On the contrary he appropriated to his own use the sum of $8036.87. Alderson on Receivers, sec. 165; Baltimore Assn. v. Alderson, 99 Fed. 489; Black on Receivers (2 Ed.), sec. 200; Heralson v. Mason, 53 Mo. 211; Lyon v. U. S. Co., 48 Mont. 591; Weems v. Lathrop, 42 Tex. 207; Westerfelt v. Mohrenstecker, 76 Fed. 118; Baylies on Sureties (1881), p. 3; Ice Mfg. Co. v. American Bonding Co., 115 Ky. 863; Otis Elevator Co. v. First Nat. Bank, 124 Pac. 704; Pingrey on Suretyship (2 Ed.), sec. 4; Stearns on Suretyship (2 Ed.), sec. 6; Kerr on Receivers (1872), p. 254; Van Slyke v. Bush, 123 N. Y. 47; Rankin v. Tygard, 198 Fed. 795; Commonwealth v. Gould, 118 Mass. 300; White v. Smith, 33 Pa. St. 186; Phillips v. Ross, 36 Ohio St. 458; High on Receivers (4 Ed.), sec. 130; American Surety Co. v. Lawrenceville Cement Co., 96 Fed. 25; Aultman & Taylor v. Smith, 52 Mo. App. 351; Frost on Guaranty Insurance (2 Ed.), secs 281, 283. (b) Even if defendant's position were sound, that the bank was put upon notice, it is no compliance with the terms of the bond to show that we could recover our money by suing the bank. We are not obliged to exhaust our remedies before proceeding against the surety. Heralson v. Mason, 53 Mo. 211, and authorities, supra. (8) Defendant is entitled to subrogation to any rights that the obligee and beneficiaries in the bond might have against the bank. If defendant's position is sound, it has furnished additional reasons why it, as surety, should have made prompt payment, for it has, according to its own showing, a complete case against the bank in subrogation to the rights of the obligee and beneficiaries under the bond. Clark v. First Nat. Bank, 57 Mo. App. 277; Berthold v. Sarpy, 46 Mo. 557; Furnold v. Bank, 44 Mo. 336; Fidelity Co. v. Jordan, 134 N. C. 236; National Surety Co. v.

State Sav. Bank, 156 Fed. 21; American Bonding Co v. Mechanics Bank, 97 Md. 598; Saussenthaler v. Surety Co., 197 Mo. App. 112. (9) When the receiver drew out money from the bank he did not draw out the bank's money, but money to which he had a legal right as trustee. Natl. Bk. v. Ins. Co., 104 U. S. 54. (10) The suit is properly brought in the name of the State at the relation and to the use of the corporation in receivership. State ex rel. Fichtenkamm v. Gambs, 68 Mo. 289. But if even defendant's contention as to the proper relator were in point of fact meritorious, it was not properly raised. It could not properly be raised by objection to the introduction of evidence. It should have been raised directly by plea or answer Having failed to do so, the objection is waived. No motion in arrest of judgment was filed. In any event, the proper plaintiff is the obligee of the bond, namely, the State of Missouri, and it is in the name of this plaintiff that the suit is filed. Furthermore, even though the court should find that the successor receiver should have been named as relator, the defect is one susceptible of amendment in this court before final judgment in this court. R. S. 1909, sec. 2120; Scott-Force Hat Co. v. Houts, 127 Mo. 392; Mechanics Bank to use. v. Gilpin, 105 Mo. 17; Hunter v. Kansas City Sav. Bank 158 Mo. 262; Weil v. Simmons, 66 Mo. 617; Cruchon v. Brown, 57 Mo. 38.

*Holland, Rutledge & Lashly* for defendant.

(1) Where a trustee has a bank account in his name as such trustee and executes and presents checks payable to himself, such checks are void; and if the bank pays same it does not by so doing in any way lessen the indebtedness of the bank to the *cestui que trust.* Miller & Co. v. Hobdy, 159 S. W. (Tex.), 96; Duncan v. Jaudon (U. S. Sup. Ct.), 21 L. Ed. 142; Mechanics Mfg. Nat. Bank v. Furniture Co., 70 L. R. A. 311; Lee v. Smith, 84 Mo. 304; Bank v. Edwards,

243 Mo. 564; Kitchens v. Teasdale Co., 105 Mo. App. 463; Johnson v. Knight, 56 Mo. App. 257; Bank v. Orthwein Co., 160 Mo. App. 369; Gerard v. McCormick, 14 L. R. A. 234; Dickett v. National Mechanic's Bank, 86 Md. 400. (2) Where a trustee carries an account in a bank in his name as such trustee and presents a check to the bank payable to his own order, the bank is placed upon its notice. In such case the bank is dealing with an agent, with knowledge that the latter is recreant to his trust, and if it honors such a check by paying the amount specified therein to the trustee in his individual capacity, it honors a check that is void. And the bank does not thereby lessen its indebtedness to the *cestui que trust* or to a successor trustee. Authorities supra. (3) The referee erred in overruling appellant's objection to the introduction of any testimony in this case. Where a receiver is appointed and qualified and is guilty of a breach of his bond, if any loss results, suit should be brought in the name of the successor receiver and not in the name of the corporation that has been thrown into the hands of a receiver. (4) When after a case is tried and an appeal taken from a *nisi prius* court, a bill of exceptions is allowed by the court and filed by a losing party, the trial court thereby loses its jurisdiction in the matter of allowing a bill of exceptions; and cannot thereafter amend such bill of exceptions so filed or allow the filing of a new one. Ross v. Railroad, 141 Mo. 390; Reed v. Colp, 213 Mo. 577; Coy v. Landers, 146 Mo. App. 413; Atchison v. Chicago & Alton Ry. Co., 94 Mo. App. 572; City of Weston v. Bank of Greene Co., 192 S. W. 126; State ex rel. v. Tower Grove Verien, 206 S. W. 242. (5) The statute in reference to penalty for vexatious delay, Laws 1911, p. 282, applies only to actions against insurance companies upon policies of insurance, and has no application to actions against bonding companies upon bonds. Sams v. Railroad Co., 174 Mo. 53.

RAGLAND, C.—This is an action on a receiver's bond. It was brought in the name of the State of Missouri at the relation and to the use of the Elberta Peach & Land Company against the Chicago Bonding & Surety Company. On motion of defendant a reference of the whole issue was directed by the court, on the ground that the trial would require the examination of a long account. The facts as found by the referee, and as to the correctness of which no question is raised, are substantially as follows:

On January 28, 1915, in a certain cause pending in the Circuit Court for the City of St. Louis, entitled Boyd, Administratrix, et al., v. Elberta Peach & Land Company, a corporation, et al., the court appointed one Henry L. Haydel receiver, authorizing and directing him as such receiver to take into his possession all of the real estate and personal property belonging to the said Elberta Peach & Land Company, including money on deposit to the credit of said company. The order of appointment was conditioned upon the giving of a bond in the sum of twenty thousand dollars to be approved by the court. Thereafter, on January 30, 1915, said Haydel presented a bond as receiver, executed by himself as principal and the defendant as surety, in the sum of twenty thousand dollars, conditioned that if said Haydel as such receiver should faithfully obey such orders as the court might make in relation to said trust and should faithfully and truly account for all moneys, assets, property and effects that should come into his hands and possession and should in all respects perform all the official duties of said receivership, the obligation to be void. The bond as presented was duly approved by the court and ordered filed and Haydel entered upon the discharge of his duties as receiver, taking into his custody and possession all of the real and personal property and assets of different kinds belonging to relator.

At the time of the receiver's qualification as such, relator had deposited to its credit with the Central

National Bank in St. Louis the sum of $9166.35. On or about February 9, 1915, "Henry L. Haydel, Receiver of Elberta Peach & Land Company," opened an account with said Central National Bank with an initial deposit of $9166.35, which account so appeared on the books of the bank and was so manifested by the issuance of a pass book in the name aforesaid, showing said sum as credited. The referee was unable to determine from the evidence whether the relator closed its balance with the bank by check in favor of the receiver, or whether upon the request of the receiver and upon the exhibition of the order of his appointment the bank closed by debit the account in the name of the Elberta Peach & Land Company and opened a new account to balance said debit in the name of the receiver, but he found that one of these two courses was pursued. After the opening of this account Haydel from time to time deposited to his credit as receiver rents accruing from relator's real estate and collected by him as such receiver, and drew checks against the account which he signed "Henry L. Haydel, Receiver, Elberta Peach & Land Co." The total amount of assets that came into Haydel's possession for which he was bound to account was $10,209.90. This amount was made up of the bank credit of $9,166.35, rents collected in the sum of $869.37, and 32 cents allowed as interest on bank deposits. Of the total assets that came into his hands Haydel faithfully administered and accounted for the sum of $2,173.03; the remainder, $8,036.87, he converted to his own use. Of this amount $7,815 was obtained from the Central National Bank by means of checks drawn from time to time against his account as receiver. There were seven of these checks in all; they were all precisely alike except as to dates and amounts and except that in some of them H. L. Haydel was designated as payee, while in others Haydel Realty Company was designated payee. The Haydel Realty Company was a corporation in which Haydel was the sole party in interest. One of these checks is as follows:

Central National Bank.

Saint Louis, Feb. 11th, 1915.  No. 2.

Pay to the order of H. L. Haydel .....................$400.00

Four Hundred and 00/100 ......................Dollars.

H. L. Haydel.

Receiver Elberta Peach & Land Co.

(Endorsement on back):

H. L. Haydel

Haydel Realty Co.

H. L. Haydel, Pres.

The remainder of the fund embezzled, $221.87, never found its way into the bank. Haydel died May 1, 1915, leaving no real estate or assets whatever other than those to which his widow was entitled as her absolute property. May 5, 1915, the court appointed Elmer E. Pearcy successor receiver in the place of Haydel. Pearcy duly qualified and in his first inventory and report to the court disclosed that the balance of $8036.87 was due from Haydel. The court approved the report and directed Pearcy to make demand upon the defendant Surety Company for said sum and to prosecute said claim against the defendant to compel the payment of said sum. The successor receiver made demand which was refused, and he then instituted this suit.

The defendant is in the general surety and bonding business for hire. It is incorporated under the laws of Illinois and is duly admitted to do business in this State under the insurance laws thereof. The referee further found as follows:

"I think it entirely clear the principal has not faithfully accounted for the funds coming into his hands, and it must have been absolutely plain precisely what the shortage was. . . . It is not in evidence that it ever made known or discussed the contention that it was not liable, because the bank still had the funds. No authorities have been presented by it applicable to its defense under such a bond. No tender has ever been made of the amounts with which the bank question is not concerned. If the statute for penalty applies, I find vexatious refusal to pay the loss, and assess plain-

tiff's damages therefor at ten per cent of the amount of the loss, and an attorney's fee of seven hundred and fifty dollars.''

The defendant admits that if it is liable for an attorney's fee, seven hundred and fifty dollars is a reasonable allowance therefor.

The petition, after pleading all necessary matters of inducement, alleges the execution of the bond and assigns as breach that said Haydel used said funds of relator that came into his custody as receiver and appropriated the same to his own use, thereby embezzling said funds of relator. It further alleges a vexatious refusal to pay the loss. The prayer is for the penalty of the bond, and an assessment of relator's damage at $8036.87, with interest, and in addition thereto ten per cent thereof for vexatious refusal to pay and a reasonable attorney's fee.

The answer is a general denial, with this further statement:

·''Further answering defendant states that whatever moneys or assets came into the possession of Henry L. Haydel as receiver of the relator were fully and completely accounted for by said Henry L. Haydel as receiver to the relator by lawfully and properly expending and disbursing a portion thereof in behalf of relator and by returning the balance to the relator, or by leaving it in a bank or banks in such manner that relator has since come into possession of same.''

At the inception of the hearing before the referee the defendant objected to the reception of any evidence on the ground that the petition, did not state a cause of action, in that, the right of action, if any, is in the successor receiver and not the Elberta Peach & Land Company. The objection was overruled.

The referee recommended judgment for the penalty of the bond and an assessment of damages in relator's favor at the amount of its loss caused by Haydel's defalcation, with interest, amounting to $8738.54, not allowing attorney's fee for relator or the additional

ten per cent for vexatious refusal to pay. Numerous exceptions were timely filed by both plaintiff and defendant. All of these the court overruled and rendered judgment for the penalty of the bond and awarded relator execution for damages in accordance with the referee's recommendations. Both sides appeared and stipulated that the two appeals be consolidated and heard as one cause in this court.

All of defendant's exceptions to adverse rulings of the referee and the trial court were properly saved for review, and in the final analysis present but two questions for decision on defendant's appeal. The first is whether the suit is properly brought at the relation and to the use of the Elberta Peach & Land Company; the second is whether either the relator or successor receiver sustained any loss by the Central National Bank having honored Haydel's checks as above set out and charging them against his account as receiver.

The referee reported as one of his conclusions of law, that the statute of Missouri, Laws 1911, with reference to vexatious delay, has no application to this action. Plaintiff filed written exceptions to the report in this respect. This was overruled by the court. If the record shows that exception was made and saved to this ruling, its correctness is for determination on plaintiff's appeal. On March 17, 1919, plaintiff presented to the trial court in which the cause was tried its bill of exceptions; it was signed by the judge and an order of court entered of record making the bill, so allowed, signed and sealed, a part of the record in the cause. On the following day the plaintiff discovered the deficiences of the bill of exceptions, and upon its motion, the order, made on the day previous, allowing, signing and sealing plaintiff's bill of exceptions, and making the same a part of the record, was by the court ordered vacated and set aside. Thereupon the plaintiff presented its bill of exceptions and the same was allowed, signed, sealed and made a part of the record. Whether the bill of exceptions presented on March 18,

1919, is a part of the record is the first question for decision on plaintiff's appeal.

I. Taking up for consideration the questions raised on defendant's appeal, its first contention is that the cause of action, if any, did not accrue to the Elberta Peach & Land Company, but to the successor receiver.

**Proper Plaintiff.** This contention is based on the proposition that "the main purpose of the orginal suit was to divest the Elberta Peach & Land Company of any jurisdiction over its assets and of any right to collect unpaid claims, and to place the *legal title* exclusively in the receiver in order to protect both creditors and stockholders." In this connection it is pertinent to observe that "the main purpose of the original suit" is not disclosed by the record. All that appears is that in a certain pending cause in which the Elberta Peach & Land Company was a party defendant, said company was in receivership; that the original receiver was by the order appointing him authorized and directed to take into his possession all of the real estate and personal property belonging to said company including money on deposit to his credit, and, with leave of court, to bring such suits as should be necessary to recover its assets and debts due it, and that the successor receiver was invested with the same duties and powers. That part of the order directing the receiver with leave of court to bring suits is by no means tantamount to an authorization to bring such suits in his own name, hence it is not shown that either the receiver or his successor had any but the powers usually and ordinarily vested in such an officer of the court. The present receiver, therefore, did not by virtue of his appoinntment become vested with the legal title to either the choses in possession or the choses in action of the Elberta Peach & Land Company. Whether the court had the power to invest him with such title, it is not necessary to decide. It is apparent, therefore, that the manner of instituting this suit by him is governed by the rule generally and

ordinarily applicable in such cases. "The weight of authority clearly supports the proposition that the receiver must sue in the name of the person having the legal right, and that when neither the Laws of the State nor the order of his appointment authorize him to proceed in his own name, he can only proceed in the name of the person in whom the right of action existed before the receiver's appointment." [High on Receivers (4 Ed.), sec. 209.] The rule applies even though the order of his appointment authorized him to prosecute suits for the collection of such choses in action as may come into his hands and he must still proceed in the name of the legal owner and can not sue in his own name. [Battle v. Davis, 66 N. C. 252.] This is the long established pratice of courts of equity and still obtain unless changed by statute. This is in effect the ruling in State ex rel. v. Gambs, 68 Mo. 289, in which it was held that a receiver appointed under what is now Section 2018 of the Practice Act cannot maintain a suit in his own name against the sureties on the bond of his predecessor. It is true the receiver may maintain an action for the conversion of property and injury thereto after the same has come into his possession, but this is on the ground that his possessiin and not his appointment gives him such a qualified and special interest in the property as to enable him to maintain such an action. In this case, as the right of action arising out of the original receiver's misappropriation, if such is the fact, of the funds of the Elberta Peach & Land Company accrued before the appointment of the present receiver, the company had the legal right thereto, and, as the right was not divested by the receiver's appointment, the suit was properly brought in the company's name.

II. The defendant's next point is that, conceding that Haydel as receiver "committed wrongs in connection with the bank account which he had as such receiver at the Central National Bank, the relator has in no way

been injured by such wrong, because it has sustained no loss. In other words, it is a case of *damnum absque injuria.*" Defendant's contention seems to be this: that as the bank had actual knowledge that relator was the real owner of the fund represented by the credit, and as checks drawn by the receiver against the same gave notice of such facts as put the bank upon inquiry, and which, had they been followed up, would have disclosed that the receiver was converting the fund to his own use, it should not have honored the checks, and by paying the same it in no wise lessened the bank's debt to the relator; that notwithstanding the bank's forms of bookkeeping, it still has relator's money and that all that it is necessary for the relator's receiver to do to recover it, is to make a demand of the bank therefor, and, if the bank arbitrarily refuses to pay, sue it. This all sounds well, if the extraordinary notions entertained by the defendant regarding its duties in the premises and the proper discharge thereof be for the moment forgotten, but it certainly involves a misconception both of the facts and the applicatory rules of law.

*Liability of Surety and Bank.*

When Haydel was appointed receiver the fund to relator's credit in the bank was $9,1666.35. The relator sustained the relation of depositor to the bank, whereby the bank was indebted to it in that sum. The legal title to this chose in action was in relator. The appointment of the receiver *per se* did not change this status. Haydel as receiver, however, withdrew this fund from the bank, and, regardless of the method employed, that is what he in effect did. This he had a right to do in the lawful performance of his duty, for he was merely taking into his possession this part of relator's assets. When Haydel redeposited the money to his own credit as receiver, he in his representative capacity, and not the relator, became the depositor. The bank was then indebted to him as receiver, and in that capacity he had the legal title to the bank credit. [Michie on Banks and Banking, sec. 130 (d); Anderson v. Walker, 49

S. W. (Tex.) 937; Union School Twp. v. Bank, 102 Ind. 464.] And the bank was bound to pay his checks when in proper form, for the contract between a bank and its depositor is that the former will pay according to the checks of the latter. [Cen. Nat. Bank v̄. Life Ins. Co., 104 U. S. 54.]

The equitable doctrine of following a trust fund has no application to this case. The assets of the bank have not been enriched to the extent of relator's loss. The fund is not in the bank. Haydel withdrew and appropriated it to his own use. The only theory upon which it can be held that the bank is liable to relator is that of aiding in and thereby becoming a party to the conversion of the fund. Haydel had a right to check the fund out of the bank in the lawful performance of his duty; what he did not have a right to do was to use it for his own benefit when so withdrawn. The bank was bound to honor his checks unless it had actual or constructive knowledge that Haydel when he presented the checks for payment was then and by means thereof intending to divert the fund. If this latter hypothesis is true, the bank is liable to relator for its participation in Haydel's breach of trust. [Miller v. Hobdy, 159 S. W. (Tex.) 96; Duckett v. Mechanics' Bank, 86 Md. 400; Duncan v. Jaudon, 21 L. Ed. (U. S. Sup. Ct.) 142.]

It is elementary that the defendant may not discharge its obligation as surety by pointing out some other person who is also legally liable for relator's loss. If, however, the entire fund had stood on the bank's books to Haydel's credit as receiver at the time of his death, the defendant would not have performed its duty by merely saying to the court, "The money is in the bank to Haydel's credit; go get it." In the first place the fund would have been payable only on the checks of Haydel's executor or administrator, notwithstanding its trust character (Schluter v. Bank, 117 N. Y. 125), and in the second place it would not have been a performance of the conditions of the bond. It was

Vol. 279          APRIL TERM, 1919.          551

State ex rel. Peach Co. v. Bonding & Surety Co.

Haydel's duty on the termination of his authority, and after his death, that of his executor or administrator, to "account for" the assets that had come into his hands as receiver. This was his duty under the law and it was a condition of the bond, and to "account for" is a condition not satisfied short of paying the fund into court or according to the court's order. [State v. Williams, 77 Mo. 463, 471.] This same duty devolved upon defendant as Haydel's surety. Under the bond in suit it was bound with its principal as an original promisor and, not having accounted for a portion of the funds entrusted to its principal, it is liable to that extent. [Pingrey on Suretyship (2 Ed.), sec. 4; Delmar Inv. Co. v. Lewis, 271 Mo. 317; Loewenthal v. McElroy, 181 Mo. App. 1. c. 405.]

III. On plaintiff's appeal defendant's contention is that the bill of exceptions allowed, signed and filed on March 18th is a nullity and no part of the record in the cause, because the court's statutory authority to allow and sign a bill of exceptions, tendered by plaintiff, was exhausted by the allowance and signing of one on the 17th. The situation might be as defendant contends had the bill of the 17th been allowed and signed by the judge in vacation. That is not the case here, however. The bill having been allowed by the *court,* its action in so doing, like any other act or proceeding, was *in fieri* during the term, and could be modified or set aside altogether should the court be moved so to do. On the 18th and during the same term, when the court vacated and set aside the order of the 17th, allowing the bill, it thereupon became a mere paper filed in the cause without vitality as a bill of exceptions, because in legal effect it had never been "allowed" as such by the court. From this it follows that the bill allowed, signed and filed on the 18th, within the time limited by the statute, became a part of the record in the cause.

*Bill of Exceptions.*

IV. Plaintiff, as appellant, complains of the action of the trial court in adopting the referee's conclusion of law that the statute allowing damages and attorney's fee for a vexatious refusal to pay has no application in this case. The statute in question is Section 7068, Revised Statutes 1909, as amended by the Act of 1911, Laws 1911, p. 282, and reads as follows: "In any action against any insurance company to recover the amount of any loss under a policy of fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance, if it appears from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee," etc. A reading of this section makes it apparent that an action to be within its terms must have two characteristics: First, it must be against an insurance company; and, second, it must be to recover a loss under a policy of insurance. The questions for decision, therefore, are (1) whether the defendant Bonding & Surety Company is an insurance company, and (2) whether the receiver's bond which it executed as surety is a policy of insurance, both within the meaning of said section. To ascertain what companies and what contracts were intended by the Legislature in the use of the terms "insurance company" and "policy of . . . other insurance," the sections should be considered in connection with the unwritten law of insurance as administered by the courts at the times of its original enactment and subsequent amendment, and with the statutes with which it is *in pari materia.*

The domain of insurance law is no longer limited to the interpretation and enforcement of fire, life and marine insurance contracts. In recent years a multitude of other forms of insurance have obtained, covering almost every conceivable risk incident to modern business

and industrial life. Concurrently with the extension of the insurance business there has been a corresponding development of insurance law through the application to the new and varied forms of insurance contracts of the fundamental rules and principles governing the older ones. By this means there has come into existence, with many others, a branch of the insurance law known as gauranty insurance, which embraces "fidelity," "commercial" and "judicial" insurances. Of these, commercial or indemnity insurance and judicial insurance, so called, are of the more recent origin, [Frost on Guaranty Ins. (2 Ed.), 11.] In the bonds or policies of guaranty insurance, the more natural attitude of a "surety" is assumed. but they are contracts of insurance none the less. [Guarantee Co. v. Bank and Trust Co., 80 Fed. 766.] In fact the contract of suretyship is inherently that of insurance. The surety is an insurer of the debt, the fidelity, or the undertaking of his principal. (Pingrey on Suretyship and Guaranty, sec. 2), and when he engages in the business of furnishing surety for hire, his obligation is no longer construed under the *strictissimi juris* rule, but is subject to the rules of construction applicable to insurance policies generally. So that speaking generally, the contracts of suretyship issued by surety companies, origanized for the purpose of furnishing surety for hire, such as the defendant, are contracts of insurance. In current decisions dealing with such contracts the courts continually refer to them indifferently as "bonds," "indemnity contracts," "insurance bonds," "insurance contracts" and "guaranty policies." [Roark v. Trust Co., 130 Mo. App. 401; Boppart v. Surety Co., 140 Mo. App. 1. c. 683; Rule v. Anderson, 160 Mo. App. 347; Association v. Am. Bonding Co., 197 Mo. App. 430; People v. Rose, 174 Ill. 310; Remington v. Fid. Dep. Co., 27 Wash. 429; Industrial & Gen'l Trust Co. v. Tod, 67 N. Y. Supp. 362; People v. Potts, 264 Ill. 522; State ex rel. v. Ogden, 172 S. W. 1172; Am. Bond. Co. v. Morrow, 80 Ark. 49.] The statute in question was originally

enacted many years ago when all of the business in this State was done by foreign companies. Its provisions covered in terms actions on policies of fire, life and marine insurance, practically the only forms of insurance in vogue at the time. Subsequently in 1869 a statute was enacted authorizing the incorporation of companies to do an insurance business other than life. The insurances expressly named in this statute were fire, marine, live stock, health, accident and fidelity, but it included "all other kinds of legitimate insurance business." It has since been amended from time to time to include lightning, hail, windstorm, burglary and theft insurance. In 1885 a law was passed authorizing any company having a paid up capital of not less than $200,000, incorporated under the laws of this State or any other state or foreign government, for the purpose of transacting the business of becoming surety on the bonds or obligations of persons or corporations, or of insuring the fidelity of persons holding places of public or private trust, to become and be accepted as surety on the bond, recognizance or other writing obligatory of any person or corporation in or concering any matter in which the giving of a bond is authorized, required or permitted by the laws of the State. It provided however, that no company not incorporated under the laws of this State should engage in such business until it complied with all the provisions of the law relating to insurance companies other than life. In the Revised Statutes of 1889, 1899, and 1909, this act appears as a part of the article relating to insurance other than life in the chapter on insurance, becoming Section 6997, Revised Statutes 1909. In 1911 that section was amended by adding a proviso: "That no domestic corporation shall be licensed *to do the business aforesaid,* until it has deposited $200,000 with the Insurance Superintendent of the State, in trust for the protection and security of its *policy holders,* No corporation, organized or incorporated under the laws of any other state . . . shall be licensed *to do the business aforesaid,* unless it has on deposit . .

a like deposit of $200,000 for the protection and security of its *policy holders* in the United States.'' [Laws 1911, pp. 274, 275.]

The same Legislature in 1911 amended said Section 7068 so that it included actions on policies of cyclone, lightning, health, accident, employers' liability, burglary, theft, embezzlement, fidelity and indemnity insurance.

The defendant was chartered under the laws of the State of Illinois ''to conduct a surety company business and for a consideration to guarantee the fidelity of persons holding public or private places of trust, and the performance of contracts, bonds, recognizances, undertakings of every kind, and of becoming surety on bonds required by law and on every kind of contract, obligation and undertaking of persons, firms and corporations.'' In that state it operates under the supervision of the insurance department thereof. It was admitted under the insurance laws of this State to do herein only the business of ''fidelity and surety insurance,'' and is subject to the visitorial powers of the State Superintendent of Insurance as an insurance company. From the character of business which the defendant is authorized to do, and which it does do, from the necessary implications of the statutes referred to and from the construction put thereon by the executive departments of the State and by the defendant itself, the conclusion is irresistible that the defendant is an insurance company within the intent and meaning of the statute under consideration.

The referee and the trial court following him were unable to reach the conclusion that a judicial bond, such as the receiver's bond, in this case, is a policy of insurance. It is true that a judicial bond is in the precise form and verbiage when executed by a compensated surety company as when executed by an accommodation surety, and it is also possibly true that the same rules of construction applicable to the latter should be applied to the former. But the construction

of the bond, that is, a delimitation of the boundaries of liability thereunder, is not involved in this case. The only question here is whether it is a policy of insurance within the meaning of the statute permitting recovery of damages for a vexatious refusal of an insurance company to pay a loss. If the bond in suit were one to insure the fidelity of a bank cashier, or to guarantee the performance of a contract for a public improvement, it would be unquestioned that the one would be a policy of indemnity insurance and the other a policy of fidelity insurance. The bond here insures the faithful performance by the principal of all the official duties of the receivership, and is essentially of the same character as the fidelity bond and the indemnity bond. All three are issued by the defendant in its business as a surety company; for the execution of all three it receives a money consideration, known as a premium, proportioned to the amount and term of the liability to be insured; in all three the obligees are characterized as policy holders by the statute authorizing the defendant to do business in this State, and requiring it to make a deposit for their security; in all three the obligees or beneficiaries are injured in precisely the same way by a vexatious refusal of the surety company to pay a loss, so that, the premises considered, it seems unreasonable to suppose that the Legislature intended to provide a remedy for those having actions on fidelity and indemnity bouds and not for those having actions on judicial bonds. Under statutes very similar to ours the Appellate Division of the Supreme Court of New York held that a bond to stay execution pending an appeal, executed as surety by a surety company, having identically the same charter powers as the defendant, was a contract of insurance. [Industrial & Trust Co. v. Tod, supra.] After reviewing the authorities and discussing the questions at length, Mr. Frost in his illuminating work on guaranty insurance comes to the conclusion that judicial bonds of the kind executed by the so-called surety companies for compensation can be

properly termed contracts of insurance. [Frost on Guaranty Insurance (2 Ed.), sec. 243 et seq.] With that conclusion we agree, at least for the purposes of this case.

The statute nowhere speaks of judicial bonds or judicial insurance *in eo nomine;* but it designates actions "on policies of . . . fidelity, indemnity . . . or other insurance." Judicial bonds and fidelity and indemnity insurance contracts are *ejusdem generis,* in that, they are all species of guaranty insurance. It follows that the receiver's bond on which this action was instituted is a policy of "other insurance" within the meaning of the statute.

Our conclusion on the whole is that this action is within the terms of the statute, and the court should, on the facts found by the referee, in addition to the loss and interest, have allowed relator as damages ten per cent of the loss and an attorney's fee of seven hundred and fifty dollars.

On defendant's appeal the judgment is affirmed; on plaintiff's appeal it is reversed and remanded to the end that the trial court may enter judgment for plaintiff in accordance with the views herein expressed, which that court is hereby directed to do.

*Brown* and *Small, CC.,* concur.

PER CURIAM: The foregoing opinion of RAGLAND, C., is adopted as the opinion of the court. All of the judges concur; *Bond, J.,* in the result.