CAROLINA MILLS DISTRIBUTING CO.
v. WORLD FIRE & MARINE
INS. CO.
No. 4831.

District Court, W. D. Missouri, W. D.
Nov. 7, 1947.

On Motion for New Trial Jan. 8, 1948.

Newbill & Brannock, Cowgill & Popham, and Sam Mandell, all of Kansas City, Mo., for plaintiff.

Hogsett, Trippe, Depping & Houts, of Kansas City, Mo., for defendant.

REEVES, District Judge.

This case was tried to the court without the intervention of a jury. There is no substantial controversy on the facts. On the essential facts, and particularly those upon which a decision should be based, there is no dispute.

It is conceded that the defendant issued its policy of insurance to the plaintiff on June 26, 1946, to assure plaintiff for a period of one year, that is to say, it was effective from June 26, 1946, until noon on June 26, 1947. The amount of the policy was $150,000, and it covered merchandise as follows:

"On Stock consisting principally of TEXTILES-Knit Goods," located at 814, 816 Delaware Street, Kansas City, Missouri.

Said policy was designated, "Water Damage Policy," and by its terms, for a stipulated consideration, it insured the plaintiff "against all *DIRECT LOSS and DAMAGE* caused solely by the accidental discharge, leakage or overflow of *Water* * * * from within the following source or sources: *Plumbing Systems* * * * except as herein provided, to an amount not exceeding one hundred fifty thousand and No/100 * * * dollars, etc."

The pertinent exception mentioned is as follows:

"This Company shall not be liable for loss or damage caused directly or indirectly, * * * (b) by floods, inundation, backing up of sewers or drains, or the influx of tide, rising or surface waters; * * *."

On June 22, 1947, there occurred a heavy downpour of rain in Kansas City, and the sewerage system serving the property where the merchandise was stored was loaded to capacity, and probably beyond, in carrying off the surface and sewage or sewerage waters drained into it. The result was that the drainage pipe from the building in which the merchandise was located became a kind of intake from the sewer. Waters from said sewer were forced up into said drainage pipe. This drainage line or pipe had what was technically known as a "house trap," located in the

basement, upon which was attached a cap or covering, which, when removed, made a considerable opening in the pipe. This cap was insecurely attached or fastened, with the result that the pressure from the heavily burdened sewer forced it off or dislodged it and the water, under the pressure, as above mentioned, was sprayed upon the walls of the basement where the merchandise was stored and occasioned the damage for which this suit was brought. The damage thus accruing, according to the testimony, aggregated the sum of $72,604.83.

It is the contention of the defendant that the exception above quoted relieves it of liability and that the plaintiff, therefore, is not entitled to recover. Thus it will be seen the question for decision rests on the meaning of the words in the exception noted, "backing up of sewers or drains."

1. It is a familiar rule, in the construction of contracts, that the intention of the parties may be gleaned from the context, as well as from the object and purpose of the entire contract. It is to be noted that the insurer undertook to protect the plaintiff against water damage. Such was the designation of the contract as a "Water Damage Policy." The insuring clause covered, "Direct Loss and Damage caused solely by the accidental discharge, leakage or overflow of Water" from "Plumbing Systems."

The insured merchandise was damaged, indisputably, by the water that flowed from the opening in the plumbing system in the building where the merchandise was stored. This discharge was through an opening made by the breaking or the dislodgment of a cap in what was designated in the evidence as a "house trap." In addition to the accidental discharge of water, the insuring clause further provided coverage against "overflow of Water" from the plumbing system.

As indicated, the defendant relies on the exception stipulated in the contract. The exception took out a part of the subject matter of the insurance, and did it in this language:

"This Company shall not be liable for loss or damage caused directly or indirectly * * * (b) by floods, inundation, backing up of sewers or drains, or the influx of tide, rising or surface waters," etc.

The reasonable interpretation of this exception is that the defendant sought to relieve itself of liability in cases of water damages by floods (which means an overflowing by unrestrained water), the influx of tide (which may be likened to flood waters), rising or surface waters (also flood water). All of these meant waters that overflowed onto the premises where the goods were situated. This language of the context will help in the interpretation of the words, "backing up of sewers or drains." This signifies the filling of the sewers or drains until the water would overflow at the drainage point where it is received into the drain. Every one is familiar with drains on premises, both in basements and in the sanitary equipments. These are frequently caused to overflow when the drains are clogged or closed, and the water backs up and floods the adjacent areas. Any damage that might be caused either directly or indirectly by such overflow, whether from floods, surface water, or water from the drains or sewers or from tides, would exempt the defendant from liability.

This interpretation is reinforced by the language of the insuring clause, which, in addition to the accidental discharge or leakage of drains, covers, in case of "overflow of water" from the plumbing system. This interpretation is consonant with the language of the exception which undertook to relieve the defendant from liability in cases of overflow, whether by floods, by inundation, by backing up of sewers or drains, or by the influx of tide water, rising or surface waters.

2. In this case there would have been no damage if the "house trap" of the plumbing system, located in the basement, had not been weak, and the cap, which ought to have been strong enough to hold fast against the pressure from the sewer had not been forced off, with the result

that the plaintiff suffered extensive damage. Quite clearly, this was an accidental discharge and leakage from the plumbing system, and was not an overflow of water from the plumbing system.

The defendant's contract did not exempt it from liability in case of accidental discharge from its plumbing system or a leakage from its plumbing system. It confined its exception to an overflow. As indicated, in this case there was not an overflow, but, on the contrary, the damages accruing to the plaintiff arose from the accidental discharge of water from the plumbing system.

Every one is familiar with the results of clogged, choked or obstructed drainage pipes and how water then backs up to overflow at the intake of the drain. When the contract was written this was in the mind of the parties. The defendant did not intend to assure plaintiff against accidents or leakage in the plumbing system if the water was going only one way.

3. A careful reading of the contract does not disclose any ambiguity. The purposes of the parties seem clear when the insurance was issued. However, if the language be ambiguous, then it is proper to interpret the contract more favorably on behalf of the insured. This is the rule on all contracts, whether insurance or otherwise. The ambiguities in a contract are construed more strongly against the one who proffers the contract.

4. It appeared from the evidence that the defendant denied liability, and, in doing so, did not assign any reason for the denial. Apparently, under the authorities, such conduct on the part of the defendant is vexatious and would entitle plaintiff, upon recovery, to damages and attorneys' fees. A reasonable interpretation of the contract leads to the conclusion that the defendant erred in denying liability and wrongfully resisted payment. In so great a catastrophe, where the water damage was so extensive, the defendant owed to plaintiff the clear duty to point out in unambiguous language, the reason for its denial of liability. The statute fixes damages at 10% of the amount of recovery, and, according to the undisputed testimony, a reasonable attorneys' fee would be 20% of the amount of the recovery. I am impressed that that is a reasonable figure.

5. The plaintiff has asked to be permitted to amend its complaint to conform to the proof. A formal motion has been filed and may be found in the pleadings. The motion seems proper and will be sustained, and an amendment will be allowed, as requested in said motion.

In view of the above, the issues should be found for the plaintiff, and judgment should be granted as prayed. Counsel for plaintiff will prepare an appropriate journal entry.

Findings of Fact and statements of Conclusions of Law will be made in accordance with the request of plaintiff's counsel as they conform to the theory here advanced.

The requested Findings of Fact and statement of Conclusions of Law submitted by the defendant have been examined. Requested Finding of Fact numbered I will be given. The other requested Findings of Fact and all the requested Conclusions of Law proposed by defendant will be refused.

On Motion for New Trial and on the Question of Allowing Damages for Vexatious Refusal to Pay in the Judgment.

After the judgment was prepared for entry in the above cause allowing damages for vexatious refusal to pay, counsel for the defendant called attention to a decision of the St. Louis Court of Appeals (Mangelsdorf v. Pennsylvania Fire Ins. Co., 224 Mo.App. 265, 26 S.W.2d 818), wherein it was held that certain kinds of insurance were not affected by Section 6040, R.S.Mo. 1939, Mo.R.S.A., allowing damages for vexatious refusal to pay a loss, for the reason that that particular kind of insurance (sprinkler) is not specifically enumerated in the statute, and that, under the rule ejusdem generis, insurance of that kind is not included. It was therefore contended by the defendant that a water damage policy of insurance was not within the statute and that therefore the court would be in error to allow damages for vexatious refusal to pay.

610

■ As against the above authority attention has been called to the case of State v. Chicago B. & Surety Co., 279 Mo. 535, 215 S.W. 20, loc.cit. 25, where the Supreme Court of Missouri undertook to construe the damage statute; and, in so doing, held generally that insurance of any kind was within the statute. Apparently it was the view of the Supreme Court that the ejusdem generis rule in construing this statute would include any kind of insurance.

An examination of the authorities does not disclose that either of these cases on the point in question were subsequently discussed or mooted; so they stand.

The motion for a new trial has also been examined. Diligent counsel has enumerated forty-three different reasons why a new trial should be granted. Each and every one relates to an interpretation of the policy. At the time the case was tried and decided the conditions of the policy sued on were examined. It seemed to be within or subject to the critical views expressed by the late Judge Henry Lamm of the Missouri Supreme Court, in Lowenstein v. Insurance Co., 227 Mo. 100, loc. cit. 137, 127 S.W. 72, 81. Judge Lamm said:

"It must be conceded that the lawmaker, because of the importance of insurance contracts and the intricate nature of the subject-matter, has evidenced a lively concern in regulating insurance companies and their contracts. This is not singular when the technicalities of the business are considered, and when experts usually represent the insurer, while the assured as a rule does not stand on an equal footing. Courts have not been laggard in keeping pace with the lively concern of the lawmaker. Policies are contracts prepared by skilled and astute people, and accepted by plain folk, the unwary and confiding. Therefore they are construed somewhat strongly against the insurer. Such policies swarm with intricate technical provisions, hedging about liability or looking to its avoidance, and courts are inclined to match their judicial astuteness to avoid a forfeiture against the astuteness of the policy maker to invent or establish one. This judicial attitude may be gathered from cases. For example:

"In Boyle's Sons v. Insurance Co., 169 Pa.St. [349], loc. cit. 355, 32 A. 553, Mr. Justice Williams, commenting on a policy, says: 'Arranged around this contract is a line of defensive "stipulations, exceptions, conditions and provisions." Some of these are not numbered, but with others numbered from 1 to 112, inclusive, they stand bristling like armed sentinels around the contract and the liability of the company thereunder, ready to impale even an honest claimant on a bare technicality.'"

Then, quoting from Judge Valliant in Dezell v. Fidelity & Casualty Co., 176 Mo. 253, loc. cit. 265, 75 S.W. 1102:

"'Courts do not favor forfeitures, nor do they favor the defeat of a meritorious cause on any purely technical ground."

The above views appear to be apposite in this case.

The judgment as proposed by plaintiff will be entered. The motion for a new trial should be overruled. Counsel for defendant has requested the court to delay the order overruling the motion for a new trial for a reasonable time after the entry of the judgment. Being of the opinion that the motion for a new trial should be overruled, counsel will advise if there should be further delay in entering the order overruling defendant's motion for a new trial.