Nancy C. BECHTOLT, Respondent,

v.

HOME INSURANCE COMPANY, Appellant.

No. 46868.

Supreme Court of Missouri,

Division No. 2.

April 13, 1959.

Lewis W. Sanders, Kansas City, for appellant.

J. Dorr Ewing and Joe Beavers, Maryville, for respondent.

JAMES W. BROADDUS, Special Judge by transfer order.

This is a suit on defendant's policy insuring growing corn against loss or damage by hail. The policy was issued to W. L. and Helen Carpenter, who assigned their claim · under the policy to plaintiff. Generally, the policy provided coverage for a reduction or ·

loss of yield up to 45 bushels per acre on 250 acres, at $1.40 per bushel, and a maximum of $15,750.

The petition alleged the issuance of the policy on July 6, 1956, a loss of the crop by hail on August 8, 1956, totaling the maximum amount named in the policy; compliance by the Carpenters with all policy provisions, and damages of $15,750 as the loss sustained. It also prayed for $1,575 by reason of the company's vexatious refusal to pay, plus $3,000 as a reasonable attorney's fee, and alleged assignment of the rights of the Carpenters under said policy to the plaintiff herein.

Defendant's answer admitted issuance of the policy, and payment of the premium, but denied. the corn insured was damaged by hail to the extent claimed or that defendant refused payment vexatiously.

Plaintiff had a verdict for $5,585 for damages sustained under the policy; $330 for vexatious delay in refusing to pay said loss, and the jury assessed attorney's fees in the sum of $2,000. Judgment totaling $7,915 was entered on the verdict. Defendant has appealed.

Defendant's first contention is that the court erred in overruling its motion for a directed verdict because "plaintiff's evidence showed various causes of loss and damage to the crop in question, at various times, some of which were insured against, and some of which were not and did not separate the damage resulting from the various causes."

The farm upon which the corn here involved was being grown is located about one and one-half miles south and west of the town of Langdon, in Atchison County. It is owned by Mrs. Carpenter.

Plaintiff offered substantial evidence to the effect that on August 8, 1956, the prospect for a corn crop was excellent. The corn insured was upon bottom land, fertilized, thoroughly cultivated, at its peak in production, and the appearance of the corn in color, etc., was excellent; that the stand

was such as to have a potential yield of from 75 to 100 bushels per acre.

To establish that the insured crop was damaged by hail and the nature and extent of the damage, Mr. Carpenter testified that he had engaged in farming all of his life; that he had seen crops he knew had been damaged by hail, and after the 8th day of August the corn was "badly beaten up, leaves were cut off, ears had hail marks on them, shucks on the ears opened, leaves split, had holes in them and many of the leaves knocked off; the ground was covered with leaves." He also testified that the approximate yield from the insured tract was "less than 40—I'd say 35 or 36 bushels" per acre.

Mr. Noel Anderson was farming land "just across the fence" from the Carpenter land in 1956. In describing the appearance of the insured corn after the August 8th hail, he said the "leaves were beat down. The stalks were bruised, the ears were bruised, it was just damaged from a hail storm." His expression in describing the extent to which the crop was defoliated was, "you could see a rabbit run all over the field."

Emmett DeBuhr testified that he picked 65 or 70 acres of the insured crop and the yield was only 12 to 15 bushels per acre; that the ears were "deformed—small nubbins;" that they had spots on them, and, in his opinion, had been damaged by hail; that the leaves were split and a substantial part of the leaves missing.

Plaintiff offered additional evidence to the same effect. This is especially true of the testimony of Edward Green, whose farm was located within a mile and a half of the Carpenter tract.

We turn now to defendant's contention that plaintiff's evidence showed various causes of damage to the crop, some of which were insured against, and some not, and did not separate the damage resulting from the various causes. Defendant lists these causes as (1) damage by reason of hail on July 8, 1956; (2) by drought, and (3) by wind.

It is true that about a month prior to the occurrence here involved Mr. Carpenter made a claim under the policy for hail loss, but after an examination of the crop with defendant's adjuster, the latter said, "he didn't think that I had any loss, and I signed a release." Thus it would seem only logical to conclude that defendant, having taken the position that no damage resulted from the July hail, should not now be permitted to assert otherwise. But in addition to that, all the evidence offered by plaintiff went to the condition of the insured crop immediately before the hail of August 8th. Not a single witness in this case, who saw the crop of corn in suit near the time of that hail, expressed any opinion other than that the corn looked excellent, good color, good growing condition, and an estimate of prospective yield of from 75 to 100 bushels per acre.

The claim that there was drought damage is answered by the positive testimony of Mr. Carpenter that: "The corn wasn't damaged by drought."

As to the assertion that wind caused some of the damage to the crop, we need but to refer to the testimony of defendant's witness Mr. Saunders, who went with the adjuster to examine the field after the hail of August 8th. He testified that "none" of the corn was down. That the crop was damaged by hail only is shown by the testimony of Mr. Carpenter and the witnesses Anderson and Green.

The case chiefly relied upon by defendant, Browning v. Springfield Fire & Marine Ins. Co., Mo.App., 8 S.W.2d 941, 944, differs upon the facts from the instant case. In that case the "plaintiff testified that he could not separate the damage done by" the hail involved in the suit "from the damage done by the other hails." This is not the situation here.

■ In our opinion, the court did not err in overruling defendant's motion for a directed verdict.

Defendant's next point is that the court erred in refusing its offered Instruction H,

which was to the effect that the plaintiff was not entitled to penalties for vexatious refusal to pay, or attorney's fees.

In support of its contention defendant first asserts that Section 375.420, RSMo 1949, V.A.M.S. does not allow the assessment of penalties for vexatious refusal to pay in a suit on a policy of hail insurance.

The statute was originally enacted in 1865, and went unchanged until 1911 (Laws of 1911, p. 282), when it was amended to read as it now stands. As originally passed, it provided that damages for vexatious delay were recoverable in an action to recover the amount of any loss under a policy of "fire, life, marine or other insurance." General Statutes of 1865, p. 402, Sec. 1. The effect of the amendment of 1911 was to add cyclone, lightning, health, accident, employers' liability, burglary, theft, embezzlement, fidelity and indemnity insurance to its previous terms. As is to be seen, the word "hail" does not appear in the amendment. The statute has at all times contained the concluding phrase, "or other insurance."

Defendant relies upon the case of Mangelsdorf v. Pennsylvania Fire Ins. Co., 224 Mo.App. 265, 26 S.W.2d 818. That case, after taking into account the familiar rule of statutory construction known as "ejusdem generis," that where an enumeration of specific things is followed by a more general word or phrase, such general word or phrase should be construed to refer to things of the same kind or character, held that a policy covering loss by a "sprinkler leakage" was not within the statute. This Mangelsdorf decision came under discussion in an opinion written by a very able Federal Judge and a former Commissioner of this Court. See Carolina Mills Dist. Co. v. World Fire & Marine Ins. Co., D.C., 75 F.Supp. 606, 609, 610. After referring to it Judge Reeves stated:

"As against the above authority attention has been called to the case of State v. Chicago B. & Surety Co., 279 Mo. 535, 215 S.W. 20, loc. cit. 25, where the Supreme Court of Missouri undertook to construe the damage statute, and, in so doing, held generally that insurance of any kind was within the statute. Apparently it was the view of the Supreme Court that the ejusdem generis rule in construing this statute would include any kind of insurance."

■ Policies of insurance whether relating to hail, or cyclone, or lightning, have to do with the indemnification against loss to property by the elements. Such being true, then, of course, hail insurance is "like" and of the same "kind and character" as cyclone or lightning insurance, specifically named in the statute, and falls within the general phrase "or other insurance" under the rule of *ejusdem generis*.

■ Secondly, defendant contends that the issue should not have been submitted because the evidence showed that reasonable questions of fact existed which defendant was entitled to litigate. In the leading case of Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, 422, 210 S.W. 37, 43, it is said: "The defendant is to be allowed to entertain an honest difference of opinion as to its liability, *or as to the extent of such liability* under the contract of insurance, *and to litigate that difference.*" (Emphasis supplied.) The court then quoted with approval from the much cited case of Patterson v. American Ins. Co., 174 Mo.App. 37, 44, 160 S.W. 59, 62, that "the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention is no reason for inflicting the penalty." In other words, the defendant "has the right * * * to defend a suit with all the weapons at its command so long as it has reasonable ground to believe its defense is meritorious." Suburban Service Bus Co. v. National Mut. Casualty Co., 237 Mo.App. 1128, 183 S.W.2d 376, 378.

With the above limitations in mind, we turn to the facts of the instant case. The defendant introduced testimony from nine wit-

nesses who had purchased corn grown on the insured farm in 1956. These men came "right in the field," and hauled the corn away in trucks. Mr. Walter Parli purchased 200 bushels, William Fisher, 420 bushels, William Auxier, 200 bushels, Charles Funk, 400 bushels, Richard Iliff, 215 bushels, Clifford Duerfeldt, "better than 1,100 bushels, it might have been 1,300 bushels," Warren Kentopp, 1,213 bushels, Albert D. Rausch, "900 and some" bushels, and Harold Snethen, 1,666 bushels. These men testified that the corn which they bought was of "good quality" except "it was carrying moisture;" that they saw "nothing unusual" about it; "did not see any defects or bruises" on the ears. With the exception of Mr. Kentopp, they paid $1.25 a bushel, which was "the going market price." Mr. Kentopp paid $1.27 a bushel for the 1,213 bushels which he purchased.

Defendant also called to the stand Mr. Bob Beckett. He testified that, together with Wayne Harshbarger, he picked approximately 200 acres of corn on the Carpenter tract; that he had seen corn fields that he knew had been hit by hail; that he saw nothing that indicated that the corn which he picked "had been hit by hail."

Mr. A. B. Keith, defendant's adjuster, testified that he had been adjusting hail losses for 24 years; that after the August hail he went upon the Carpenter land together with Mr. Carpenter and Mr. A. T. Saunders; that he "estimated that about 4 or 5% of the leaf area was destroyed by hail;" that he saw no damage to the stalks, nor did he "find any ears where the kernels were mashed" by hail; that based upon his experience, and "considering the stage of growth the corn was in, and with a 4 or 5% leaf area destroyed" the damage to the yield would be "unmeasurable. It's so small that it is impossible to measure."

Mr. Saunders testified that he was an insurance solicitor, but that he had no connection with defendant; that he had examined many fields after they had been struck by hail; that he accompanied Mr. Keith and Mr. Carpenter to the field; that he saw "a little" damage by hail; that "the counts that I remember were about 5 to 6% defoliation caused by hail;" that the effect on yield "from a 5% defoliation" would be an "unmeasurable loss * * *. There might be, you could say, as much as a half of one percent."

Thus it clearly appears that defendant had reasonable grounds to believe that the *extent* of plaintiff's loss was not nearly as great as she claimed. It follows that the court erred in submitting the issue of vexatious refusal to pay to the jury.

If the plaintiff will within 15 days from the announcement of this opinion file a remittitur of $2,330, the judgment for the reduced amount of $5,585, with interest thereon at the rate of six percent per annum from September 17, 1957, the date of the original judgment, will be affirmed; otherwise the cause will be reversed and remanded. It is so ordered.

STORCKMAN, P. J., and EAGER, J., concur.