(123 So. 265)

## CRAFT v. STANDARD ACCIDENT INS. CO.

### (6 Div. 299.)

Court of Appeals of Alabama. Nov. 8, 1928.

Rehearing Denied Jan. 8, 1929. Reversed on Mandate June 29, 1929.

Bradley, Baldwin, All & White, W. M. Rogers and S. M. Bronaugh, all of Birmingham, for appellant.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellee.

SAMFORD, J. This matter was submitted to the court and tried without intervention of a jury, and before entering upon the trial the plaintiff requested the court to make a special finding of facts in the case, which was done. That finding was as follows:

"First. That Mrs. Ida S. Jones was employed by the Redpath Lyceum Bureau of Birmingham, Alabama, in May, 1925, and not by the plaintiff. A Mr. Harry P. Harrison of Chicago, Illinois, then owned the exclusive right to use the name of Redpath in this territory, and furnished the capital to operate the business. The plaintiff, Merritt Craft, had a partnership arrangement with the said Harry P. Harrison of Chicago, Illinois, whereby he was to receive a salary of three hundred ($300.00) dollars a month and share in

one half of the profits of the business operated in Birmingham, Alabama. The plaintiff did not have any contract with Mrs. Ida S. Jones.

"Second. Prior to May, 1925, Mrs. Ida S. Jones had been in the employ of the Redpath Lyceum Bureau for about seven or eight years. For some time prior to February, 1923, the Redpath Lyceum Bureau had paid Mrs. Jones the sum of two hundred ($200.00) dollars per month for her services. In February, 1923, the salary of Mrs. Jones was reduced to one hundred fifty ($150.00) dollars per month with the understanding that the employment from then on would be by the year at a gross sum of eighteen hundred ($1800.00) dollars per year; payable one hundred & fifty ($150.00) dollars per month with the further agreement that the year should run from October 1 to October 1. Under .this arrangement Mrs. Jones continued to work for the Lyceum Bureau from February, .1923, to October 1, 1923, and on the same agreement she continued in said employment from October 1, 1923, to October 1, 1924, and she further continued in the same employment from October 1, 1924, up till June 8, 1925. In April, 1925, the plaintiff, acting for the Redpath Lyceum Bureau, informed Mrs. Jones that her services would not be needed after June 1, to which Mrs. Jones protested and insisted that she had a contract up to October 1, 1925. Said contract was extended and renewed on October 1, 1924, and was not within the Statute of Frauds. This contract was breached by the Redpath Lyceum Bureau, and Merritt Craft, acting as manager of the Redpath Lyceum Bureau, employed Mrs. Jones for the said Lyceum Bureau.

"Third. Merritt Craft had two accounts in the bank, one under the style of "Merritt Craft, Manager," in which account was kept all the funds of the said Redpath Lyceum Bureau business, which funds were derived from the operation of this business. Out of these funds was paid all the expenses of operating the business, including the salaries of Merritt Craft and of Mrs. Jones. Merritt Craft also had another account under the style of 'Merritt Craft, Personal.' In this account was deposited the personal funds of the plaintiff.

"Fourth. Mrs. Jones as employee of the said Redpath Lyceum Bureau was stenographer and bookkeeper in full charge of the office and with authority to sign the name of Merritt Craft, Manager, by herself, to checks in payment of current expenses and bills, including the salaries of Merritt Craft and herself. She often drew salary of Merritt Craft out of the account of Merritt Craft, Manager, and deposited it in the account of Merritt Craft, Personal.

"Fifth. On May 5, 1925, Mrs. Jones drew a check of the Redpath Lyceum Bureau on the account of Merritt Craft, Manager for the sum of seven hundred and fifty ($750.00) dollars, payable .to herself, said check having written on its face 'Redpath Lyceum Bureau —Musical Bureau—Merritt Craft, Manager,' and on May 6, Mrs. Jones addressed a letter to Mr. Harry P. Harrison of Chicago, Illinois, advising him that she had drawn this check by reason of Mr. Craft's attempted cancellation of her contract of employment and offered to perform her contract up to October 1, 1925, copy of which letter was sent to the plaintiff. Mrs. Jones further stated that in the event she should obtain suitable employment elsewhere up to October 1, 1925, she would refund whatever amount she made in the other employment. Mrs. Jones used diligent efforts to secure other employment of like kind and character and did secure employment beginning on September 1, 1925, for the month of September, 1925, and on August 25, 1925, her attorneys, Messrs. Haley, Woolverton & Haley, sent a check to Messrs. Bradlay, Baldwin, All & White, as attorneys for the plaintiff, in the sum of one hundred and fifty ($150.00) dollars. On this check was marked these words: 'In full settlement of claim of Merritt Craft et als., against Ida S. Jones.'

"Sixth. This check was sent as payment in full of all claims against Mrs. Jones and was received by the attorneys for the plaintiff and they acknowledged receipt on September 2, 1925. Neither the plaintiff nor his attorneys have returned said check to Mrs. Jones or anyone else and have held same up to this time and now hold same, although the attorneys for the plaintiff stated that they could not accept the check upon the conditions therein specified. A short time before the trial the attorneys for the plaintiff took this check for one hundred and fifty ($150.00) dollars to the office of the attorneys for Mrs. Jones and offered to return this check if they were given another check with the words 'in full settlement of claim of Merritt Craft et als. against Ida S. Jones' left off. The attorney for Mrs. Jones declined to do this and the attorneys for the plaintiff kept the check for one hundred fifty ($150.00) dollars up to the time of bringing this suit, and now have same. At the time said check was sent and received by the attorneys for the plaintiff the account between Mrs.' Jones and the plaintiff was in dispute. The sum of one hundred fifty ($150.-00) dollars was all that Mrs. Jones was able to earn from the time that she was discharged up to October '1, 1925.

"Seventh. At the time Mrs. Jones drew the check for seven hundred and fifty ($750.00) dollars on the account of Merritt Craft, Manager, she had not been paid salary for the months of May, June, July, August and September, 1925. Said sum was not deducted by the bank from the account of the plaintiff,

but from the account of the Redpath Lyceum Bureau in the name of Merritt Craft, Manager. Merritt Craft as manager of the Redpath Lyceum Bureau in the Birmingham district was responsible for the funds in the account of Merritt Craft, Manager, although he stated to Mrs. Jones that Mr. Harrison would have a sweet time getting anything out of him. There was no evidence that any demand had been made by anyone on Merritt Craft for the sum drawn by Mrs. Jones or that he had been compelled to pay it, and there is no evidence that the plaintiff has suffered any actual loss.

"On the 15th day of September, 1923, the defendant issued to the plaintiff a contract which is hereto attached and marked Exhibit A.

"Eighth. Defendant's pleas 4, 11, 13, 14 and 15 were filed with the consent of Mrs. Ida S. Jones.

"Defendant's pleas 3, 5, and 6 were also filed with the consent of Mrs. Ida S. Jones and the facts averred in said pleas were proved without dispute.

"Ninth. The court finds that there is no evidence to sustain any count of the complaint and the court further finds as a fact that all of defendant's pleas were proven, and that the evidence is not sufficient to support a judgment on any count of the complaint.

"Tenth. The court further finds it a fact that no funds were drawn by Ida S. Jones or deducted by the Bank from the account of the plaintiff and that there is a material variance between the allegations and the proof."

█ The plaintiff's cause of action is founded upon a bond or contract, executed by the defendant as surety, guaranteeing the plaintiff against loss by reason of certain specified acts of Mrs. Ida S. Jones, an employee of the plaintiff. It is the contention of the plaintiff that plea 4 wholly fails to show any connection between the transaction upon which plaintiff's action is based and the contract set up in the plea. With this contention we do not agree. The plea refers to the complaint and, in effect, makes the complaint a part of the plea so far as to describe the claim of the plaintiff against this defendant. The complaint and plea 4, taken together, state the whole transaction between all the parties, and the alleged breaches on the part of Mrs. Jones, as well as the failure of defendant to pay the claim growing out of the act of Mrs. Jones for which defendant became surety. Moreover, plea 4 is not demurred to on the ground here contended for, and the question cannot now be raised for the first time. Bevis v. Gay, 212 Ala. 525, 103 So. 555; Code 1923, § 9479.

█ The next contention of plaintiff is that the plea of recoupment set up by defendant is based on a claim owned by another party who is not a party to the suit. Let us see if this is true.

The plaintiff was the manager of a business in Birmingham, Alabama, which he either owned himself, or of which he was the managing head, and personally responsible for all moneys coming into the business. As such manager he employed Mrs. Ida S. Jones to perform certain duties, among which was the handling of the books and the bank account, including the power to draw checks on the bank against the account of the business. To protect plaintiff against loss by reason of certain specified acts of Mrs. Jones, this defendant entered into a contract in writing with the plaintiff, whereby it agreed to indemnify or secure plaintiff as against loss on account of certain specified acts of Mrs. Jones named in the contract. This made defendant the surety for Mrs. Jones, according to the terms of the contract, and therefore the rights of defendant in this suit, so far as plea 4 is concerned, are to be determined under those rules governing in cases of principal and surety, rather than according to that line of cases involving regular contracts of insurance. While the contract here sued on is, in a sense, a kind of insurance against loss, and its terms and obligations are to be interpreted in such way as to resolve all doubts in favor of the plaintiff, as is the practice in interpreting insurance contracts (Ala. F. & C. Co. v. Ala. Savings Bank, 200 Ala. 337, 76 So. 103), in reality such a contract creates a suretyship and nothing more. Ill. Surety Co. v. Donaldson, 202 Ala. 183, 79 So. 667; Frost Guarantee Ins. pages 42, 43, and 512; Rice v. Fidelity & Deposit Co. (C. C. A.) 103 F. 427. In discussing the question here considered, our Supreme Court had this to say: "With a view to its decision, leads the court to the conclusion that the Legislature did not intend to impose the rule of that Statute (Code 4579) upon bonds of indemnity assuring the fidelity of employees in a particular service," and Mr. Frost in his work on Guarantee Insurance, at page 512, says: "It is clearly apparent that in order to render a claim by the insured on the bond against the insurer enforceable, there must be in existence at the same time a corresponding claim valid and enforceable in favor of the insured as against the risk named in the contract."

The fact is, the contract of suretyship is inherently that of insurance. The surety is the insurer of the debt, the fidelity, or the undertaking of his principal, who thereby becomes the principal, and when the surety engages in the business of furnishing surety for hire, the relationship of the parties is not changed, but the obligation is no longer con-

strued under the rule of strictissimi juris, but is subject to the rules of construction applicable to insurance policies generally. So that, generally speaking, contracts of suretyship issued by surety companies organized for the purpose of furnishing for hire, such as the contract in the present case, are, in the sense above described, insurance contracts, the terms of which, as in insurance contracts generally, are to be construed most strongly against the company who prepares and issues the contract. State v. Chicago Bonding Co., 279 Mo. 535, 215 S. W. 20. But such designation of the contract as an insurance policy, or what not, does not deprive the surety of such defenses as he has by reason of his suretyship.

 From the nature of the defense set up by the defendant in its plea of recoupment No. 4, it is clear that the defendant, who has contracted to pay the shortage of its principal, Mrs. Ida S. Jones, should be, and is, allowed by proper plea to set up this, like any other defense which is open to the principal. Especially is this so where it is alleged in the plea that the matters and things therein pleaded are by the consent of Mrs. Ida S. Jones. Merchants' Bank v. Acme Lbr. & Mfg. Co., 160 Ala. 435, 49 So. 782; Graves v. Æltna Ins. Co., 215 Ala. 250, 110 So. 390. As was pointed out in Merchants' Bank v. Acme Lbr. Co., supra, there remains a difference between the statutory plea of set-off and the common-law plea of recoupment. In the latter the defendant may reduce the plaintiff's claim, even to the extent of cutting it out entirely, by setting up any defense open to the principal. The writer is of the opinion that this defense, being equitable, might be set up by the surety, without the consent of Mrs. Jones, the principal, but the decisions of our Supreme Court would hardly justify such a holding.

██ It is insisted that plea 4 was defective, in that it failed to allege that the claim of Mrs. Ida S. Jones was subsisting at the time of trial. If it be conceded that the plea failed in this particular, still it would not be grounds for reversal, as by common consent it appears that this point was actually litigated and passed upon by the court in passing upon the evidence, and therefore the overruling of plaintiff's demurrer on this ground did not injure plaintiff in any substantial right. Moreover, it is said that the doctrine of recoupment is but a liberal and beneficial improvement upon the old doctrine of failure of consideration. It looks through the whole contract, treating it as an entirety, and treating the things done and stipulated to be done on the one side as the consideration for the things done or stipulated to be done on the other. Lufburrow v. Henderson, 30 Ga. 482. It would appear, therefore, that the question of the existence of the claim of Mrs. Ida S. Jones, at the time of trial, is one of evidence rather than pleading. Grisham v. Bodman, 111 Ala. 194, 20 So. 514.

██ Pleas 4, 11, and 13 allege a contract of employment between Mrs. Ida S. Jones and plaintiff to be performed within a year, and such contract as pleaded is not obnoxious to the statutes of frauds. 27 Corpus Juris, 188.

██ When a claim is in dispute or unliquidated, and a check or draft in settlement is delivered to the party to whom the amount is due, such check or draft being of such character as to give the party to whom delivered notice that it must be accepted in full satisfaction of the claim or not at all, and such check or draft is retained, the retention of such check or draft for an unreasonable time will amount to an election to treat the payment as a full settlement. 1 Corpus Juris, pp. 562, 563 (85–87). Plea 5 sufficiently presents this defense.

There is no denial that plaintiff accepted the check described in plea 5 in full, accord and satisfaction of the claim which he had against Mrs. Ida S. Jones. Demurrer to the replication to this plea was properly sustained.

██ There is another phase of this case to be considered on this appeal. The plaintiff and a Mr. Harrison entered into an arrangement whereby plaintiff was to conduct the Redpath Lyceum Bureau in certain designated territory, as manager. He was responsible for all monies received, and was to receive out of the proceeds as a salary $300 per month, and he and Harrison were to divide the profits equally. This, under section 9372 of the Code of 1923, constituted Craft, the plaintiff, and Harrison a partnership doing business under the name of Redpath Lyceum Bureau, with Craft as manager, responsible to the partnership for the handling of the money. Mrs. Ida S. Jones was employed by Craft to work for the Redpath Lyceum Bureau as office woman; she was paid for her services out of the funds of the partnership; and all of her work pertained to the affairs of the firm. It was Craft's duty to handle the cash and sign all checks, but this work was confided by Craft, as manager, to Mrs. Ida S. Jones, and she was authorized by him to sign checks on the bank account of the firm carried in the name of Craft, Manager, and for which Craft was personally responsible to his other partner. This gave Craft such an interest in the fidelity of Mrs. Jones as would authorize him to demand a surety bond, payable to himself to protect him from loss by reason of the unauthorized abstraction of funds by Mrs. Jones. Whether the act of Mrs. Jones in abstracting the funds of the firm is a crime for which a criminal prosecution will lie is not here necessary to decide, but we do hold that if the Redpath Lyceum Bureau was not

liable to her for the breach of the contract of employment, such abstraction as above was a breach of faith such as is covered by a surety bond as here sued on. However, the obligation of the surety under the bond ran to Craft as an individual, and before he could recover in this suit he must show a personal loss sustained by him as a result of the bad faith of Mrs. Ida S. Jones.

█ We find no fault with the many authorities cited by appellee to the conclusion that loss must be shown before action will lie, but in this case the loss is shown. So far as the parties to this suit are concerned, the money in the bank in the name of Craft, Manager, was the money of Craft, and while he was holding it as as trustee for the firm, nonetheless he could have maintained an action against the bank in his own name, the word manager being used in connection with the deposit as descriptio personæ.

The appellee also insists that the plaintiff cannot maintain this action because of a lack of insurable interest in Mrs. Jones. The position is untenable. The contract is not one of insurance, but of suretyship. The contract in express terms designates it as such, and while we have hereinabove said that it was a *kind* of insurance, we have really held that the contract and the relation of all parties thereto was that of principal and surety. That being the case, if by reason of the relationship of the parties the manager saw fit to entrust certain of his duties to an employee under him, a surety bond given to secure him against loss by reason of the infidelity of such other employee is based upon sufficient interest to make the contract binding and enforceable according to its terms.

Out of consideration for the able briefs filed on this appeal both by appellant and appellee we have gone more elaborately into this case than a mere decision required. As we view the record, the decision of the lower court must be upheld.

█ (1) Upon conclusions of fact every doubt must be resolved in favor of the decision of the trial court, and in this case the evidence is sufficient to sustain the trial court in the following particulars: The defendant's pleas of recoupment were sustained by the evidence; the defendant's pleas of accord and satisfaction were sustained by the evidence.

Let the judgment be affirmed.

Affirmed.

PER CURIAM. Reversed and remanded on authority of Craft v. Standard Accident Ins. Co., 220 Ala. 6, 123 So. 271.