The HOUSING AUTHORITY OF the CITY OF CLINTON, Missouri For the Use of EVANS ELECTRICAL CONSTRUCTION COMPANY, a corporation and Evans Electrical Construction Company, a corporation, Respondents,

v.

Lulu BAUMANN, Executrix of the Estate of George Baumann d/b/a George E. Baumann Construction Company and United Pacific Insurance Company, a corporation, Appellants.

No. KCD 26–285.

Missouri Court of Appeals, Kansas City District.

July 1, 1974.

Motion for Rehearing and/or Transfer Denied Aug. 5, 1974.

Glenn E. McCann, Knipmeyer, McCann, Fish & Smith, Kansas City, for appellant Baumann.

Bernard L. Balkin, Achtenberg, Sandler & Balkin, Kansas City, for appellant United Pacific.

Charles R. Svoboda, Fred A. Murdock, Kansas City, for respondents.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD , Judge.

This is an appeal from a money judgment entered in a court-tried case which arose out of a construction project in the City of Clinton, Missouri. On June 28, 1967 the appellant, George E. Baumann d/b/a George E. Baumann Construction Co. (hereinafter referred to as "Baumann"), as general contractor entered into a contract with the Housing Authority of the City of Clinton, Missouri (hereinafter referred to as "Authority") for the construction of 150 low cost housing units together with related facilities. Under Section 107.170 RSMo 1969, V.A.M.S., Baumann furnished a performance bond in the penal sum of $1,573,432.63 wherein Baumann was principal, and appellant, United Pacific Insurance Company, a corporation (hereinafter referred to as "United"), was surety, under the terms of which bond Baumann and United were jointly and severally liable for the payment of all materials and labor (including those furnished by Baumann's subcontractors) which were supplied, used or consumed in the construction involved.

On September 1, 1967, Baumann entered into a subcontract with respondent Evans Electrical Company, a corporation (hereinafter referred to as "Evans") under the terms of which Evans was to furnish all material and perform all work and labor necessary to complete the electrical work on the project for the contract price of $85,400.00. On January 2, 1968, Baumann increased the Evans subcontract by the amount of $4,020.00 for extra work involving the installation of certain air conditioner receptacles, thus, bringing the contract price to $89,420.00. In addition to the above, there was an extra item due Evans in the amount of $173.94 for rewiring work done by Evans because of a construction error by Baumann.

Under the terms of the general construction contract, Baumann was to submit to Authority each month a document styled "Periodical Estimate for Partial Payment"

to cover the work performed on the project for the preceding 30-day period. These estimates were to set forth in detail the work completed on the project (including that of subcontractors such as Evans) and the cost and value thereof and the value of the unused materials stored on the job site. These estimates required the approval of the Authority or its architect and upon payment thereof to Baumann, he, in turn, would remit to his subcontractors their proportionate share of such estimates.

Baumann was paid by Authority for the first 16 periodical estimates but it refused to pay estimates No. 17 and No. 18. Authority's refusal to pay these estimates, was not due to any act or fault of Evans.

Upon such refusal, Baumann shut down the job and on January 29, 1969 he notified Evans in writing, "We are ceasing all operations on the above project as of 4:30 p. m. January 31, 1969, due to the architect's and owner's continued default and breach of contract." At this time the total construction was about 90% completed and Baumann had paid Evans $64,614.20 under the subcontract. There is no dispute as to this amount nor of the fact that on January 31, 1969 Evans had furnished materials and work and labor under its subcontract (and the rewiring above referred to) in a total amount of $80,516.74, thus leaving an unpaid balance due to Evans of $15,902.54.

The record before us shows that Evans made demand upon Baumann for the payment of this balance, but payment was refused. On March 19, 1969, Evans also made a written demand upon United for the payment of this balance. The claims manager for United testified that upon receipt of this demand, the company took no independent action to determine its liability to Evans under the bond, other than to turn the matter over to Baumann's attorney for defense. It made no effort to pay or settle the Evans claim, apparently in reliance upon the financial capability of Baumann to discharge "his obligations without the assistance of his surety". United

would "therefore leave the settlement discussions on these amounts to Mr. Baumann and his attorney". No payment was made on the Evans account and this suit was filed.

The court below made extensive findings of fact and conclusions of law and entered a judgment in favor of the plaintiffs and against the defendants for the penal amount of the performance bond, to be satisfied upon the payment by the defendants of $15,902.54 plus the sum of $3,106.30 for interest at the rate of 6% from March 19, 1969 together with costs, and a further judgment against United and in favor of Evans in the amount of $6,719.25 which represented $1,590.25 for statutory penalty for vexatious delay, $5,000.00 attorney's fee and $129.00 attorney's expense.

It is from this judgment that this appeal was taken.

The first point raised by appellants is that, because of the terms of the contract between Baumann and Evans (and by reference the terms of the contract between Baumann and Authority) no payment was due Evans for work completed and materials furnished, but not compensated for on January 31, 1969. The basis for such position is that the monthly estimates furnished by Baumann to Authority for the period involved had not been approved or paid.

■ Appellants completely misconceive the nature of this action. This is clearly not a suit upon a contract calling into application the principles of contract law relied upon by appellants. Although the execution of the Baumann-Evans contract is alleged the cause of action stated, is a classical example of a suit based upon *quantum meruit,* for work, labor and material furnished by Evans to Baumann, based upon an implied promise to pay the reasonable value thereof. Such implied promise is imposed by law in the circumstances of this case.

In Paragraph 8 of Count I, in Evans' petition, it is alleged:

"The *reasonable value* of the labor and materials supplied and performed under said contract in accordance with Evans bid, and which was done at Baumann's request and under aforesaid contract was * * * (Emphasis supplied)

The evidence in this record is undisputed that the electrical subcontract with Evans was terminated by Baumann on January 31, 1969 when Baumann "Shut down the job" and thus Evans was prevented from completing his work thereunder. While the reason for Baumann's action is somewhat obscure, it stemmed from his difficulties with Authority and not from any actions or default of Evans. Likewise, no challenge is made as to the reasonable value of the Evans work and labor and materials furnished to January 31, 1969, nor that $15,902.54 had not been paid. Indeed, this figure is supported by Baumann's periodical estimate number 18 to Authority and by Baumann's pending litigation against Authority.

■ Under such circumstances, Evans had the choice of suing upon a breach of his express contract or upon an implied contract in *quantum meruit*. The rule is thus stated in Rodgers v. Levy, 199 S.W.2d 79, l.c. 81 (Mo.App.1947):

"It being plaintiff's contention that defendants wrongfully prevented him from completing the contract, he had a *choice* of standing on his express contract or of suing on *quantum meruit* for the value of the labor and materials he had furnished. That such is the law is well settled. . . . We construe plaintiff's cause of action to be based on *quantum meruit*. The petition alleges that all of the items of the account were 'reasonably worth the amount charged therefor at the time the same was furnished and delivered.' *If this were an action on an express contract the allegation of the reasonable value of the services would have no place in the petition.*" (Emphasis supplied)

Fuhler v. Gohman & Levine Const. Co., 346 Mo. 588, 142 S.W.2d 482, 484 (1940); Ott v. Moore, 20 S.W.2d 166, 167 (Mo. App.1929); Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824, 828–829 (1953). By making this choice, of course, Evans waived his right to sue on the contract. Isaac v. Koenig, 447 S.W.2d 818, 820 (Mo. App.1969).

Having thus cast its claim upon *quantum meruit,* the contract provisions relied upon by the appellants do not constitute any defense to the Evans claim. The first point raised by appellants is without merit.

The second point on appeal is that the court below erred in making a finding of fact and conclusion of law allowing statutory penalties against United. This point is based upon three grounds, namely, *one,* the evidence does not support the finding of vexatious refusal to pay by United; *two,* the plaintiffs sued for a greater amount than it was entitled to recover; and *three,* there was no competent evidence before the court of a reasonable amount for attorney's fees incurred in prosecuting the claim on the United bond.

The bond here involved wherein Baumann was principal and United was surety, under the mandatory provisions of Section 107.170 RSMo 1969, V.A.M.S., was conditioned "for the payment of any and all materials * * * consumed or used in connection with the construction * * * and for all labor performed in such work whether by subcontractor or otherwise." Under the specific terms of Section 522.300 RSMo 1969, V.A.M.S., Evans was given the right as subcontractor to sue on such bond furnished under Section 107.170 RSMo 1969, V.A.M.S., in the name of the Authority for Evans' use and benefit.

Section 375.420 RSMo 1969, V.A.M.S., providing for statutory penalties for vexatious refusal to pay, states in pertinent part:

"In any action against any insurance company to recover the amount of any loss under a policy of * * * indem-

nity, * * * or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten percent on the amount of the loss and a reasonable attorney's fee; * * *"

This statute has long been held to encompass contracts of suretyship within the term "or other insurance". State ex rel. and to Use of Elberta Peach and Land Co. v. Chicago Bonding and Surety Co., 279 Mo. 535, 215 S.W. 20, 25 (1919); Camdenton Consolidated School District No. 6 ex rel. Powell Lumber Co. v. New York Casualty Co., 340 Mo. 1070, 104 S.W.2d 319 (1937).

Clearly the bond here involved falls within the terms of the statute. It remains only to decide if the facts of this particular record warrant the imposition of the statutory penalties.

In so doing, we are guided by certain well-established principles. This statute is penal in nature and therefore must be strictly construed, Duckworth v. United States Fidelity and Guaranty Co., 452 S.W.2d 280, 287 (Mo.App.1970); the term "vexatious" means without reasonable or probable cause or excuse, Pfingsten v. Franklin Life Insurance Co., 330 S.W.2d 806, 817 (Mo.1960); to support the imposition of the penalties there must be evidence from which it may be found that the refusal to pay the loss was willful and without reasonable cause as that fact would appear to a reasonable and prudent man prior to trial, Hammontree v. Central Mutual Ins. Co., 385 S.W.2d 661, 668 (Mo.App.1965); it is not required that the claimant must show affirmatively that the refusal was vexatious but only "that the evidence and circumstances of the case be sufficient to justify the conclusion that the refusal was vexatious", Handly v. Lyons, 475 S.W.2d 451, 461 (Mo.App.1972); and that the claim for such penalties may also include the amount of suit expenses in-

volved in collecting the insurance, Willis v. American National Life Insurance Co., 287 S.W.2d 98, 105 (Mo.App.1956).

The record before us clearly warranted the imposition of the penalties under Section 375.420 RSMo 1969, V.A.M.S. After Baumann's breach of the Evans contract and Baumann's refusal to pay the loss, under date of March 19, 1969 Evans made written demand upon United for the amount due it under its contract with Baumann. In response thereto the only action taken by United was its letter to counsel for Evans under date of April 4, 1969 wherein it, in effect, "washed its hands" of the whole matter and turned it over to Baumann, with whom it was jointly and severally liable.

As was said in State ex rel. and to Use of Elberta Peach and Land Co. v. Chicago Bonding and Surety Co., supra, 215 S.W. at l.c. 24:

"It is elementary that the defendant may not discharge its obligation as surety by pointing out some other person who is also legally liable for relator's loss."

United did not investigate the matter, examine the merits of Evans' *quantum meruit* claim, attempt to negotiate a settlement, nor take any other action or assert any legal or factual position or defense which would indicate good faith or the lack of willful refusal to meet its obligations. No reasonable cause appears for the refusal by United and under the circumstances of this case there is ample justification to conclude that such refusal was willful and the statutory penalties were properly imposed.

The fact that Evans claimed an amount in his petition greater than that to which he was entitled is without merit. The March 19, 1969 demand from Evans upon United claimed a loss of exactly $15,902.54, the basic judgment ultimately found by the court to be due Evans as of January 31, 1969. When Evans' suit was filed on October 2, 1970, it claimed an additional sum

of $809.60 due to increased labor costs incurred by Evans because of Baumann's failure to complete the work within the time specified under the contract. The court below did not award this additional sum.

 It is true that there is authority that where a claim is asserted under a policy far in excess of any actual loss, the insurer cannot be charged with willful, vexatious refusal to pay the amount of the claim nor to tender the true amount of the loss. Such authorities are cited in appellants' brief.

Here, we are confronted with a factual situation that renders such authorities inapplicable. The demand of Evans was for the amount of the actual loss and ultimate basic recovery. For a period of over a year and a half, after demand and before suit, United did nothing. This was tantamount to a refusal on its part to pay anything or even entertain the claim. The distinction is obvious and is pointed up by the statement in Glover v. Liverpool and London and Globe Ins. Co., 193 Mo.App. 489, 186 S.W. 583 at l.c. 584 (1916):

> "There is a vital difference between the position of an insurer who wrongfully refused to recognize any liability under the policy and one (as in the *Kahn* [Kahn v. Assurance Corp., 187 Mo.App. 216, 173 S.W. 695] and *Fager* [Fager v. Insurance Co., 189 Mo.App. 464, 176, S. W. 1064] Cases) whose only asserted offense was that of refusing to accede to a demand in excess of the liability under the policy."

See also: Block v. United States Fidelity and Guaranty Co., 316 Mo. 278, 290 S.W. 429, 442 (banc 1926); Irelan v. Standard Mutual Association of Cassville, 379 S.W. 2d 815 (Mo.App.1964).

Plaintiffs' claim for the statutory penalties cannot be defeated because its petition prayed for an additional $809.60.

 Appellants' final contention on this element of the appeal, that there was no competent evidence before the court as to the amount of attorney's fee, is likewise without merit.

Counsel for Evans testified in detail as to the work he had performed for his client in asserting the claim and prosecuting the suit. He stated that the time thus expended by him was 142½ hours. The court below allowed an attorney's fee of $5000.00 plus reimbursement of $129.00 suit expenses advanced by counsel (Willis v. American National Life Insurance Co., supra). This fee amounts to just under $35.-00 per hour.

Appellants' complaint is apparently based upon the tenuous reasoning that the trial court did not allocate this time as between efforts expended by counsel in his efforts to collect from Baumann and those expended as against United. Both were jointly and severally liable for the basic judgment for labor and materials, they were jointly sued and it would be impossible for counsel or the court below to thus segregate or allocate counsel's time. It was one effort toward recovery. It was successful in establishing the joint and several liability of Baumann and United upon the basic claim and in addition the separate statutory liability of United as an insurer or surety under Section 375.420 RSMo 1969, V.A. M.S. The two elements of the single case could not be divorced so far as attorney's fees were concerned.

 It can further be gleaned from appellants' brief that complaint is made that neither counsel for Evans nor independent attorneys placed a "price tag" on the 142½ hours of service as reasonable and proper compensation. The trial judge is properly qualified to perform this function without the aid of expert testimony. Sebree v. Rosen 393 S.W.2d 590, 599 (Mo. 1965); Cascio v. Cascio, 485 S.W.2d 857 (Mo.App.1972); Gross v. Gross, 319 S.W. 2d 880, 885 (Mo.App.1959). The allowance of attorney's fee and expenses was proper upon this record.

**442**

We find that there was ample and substantial evidence to support the findings of the court below, no error of law appears, and the judgment is not clearly erroneous. Rule 73.01(d), V.A.M.R.

The judgment is accordingly affirmed.

All concur.