STATE ex rel. Mavis NEESE and Mary C. Damm, Plaintiffs-Appellants,

v.

IGF INSURANCE COMPANY, Defendant-Respondent.

No. 67403.

Supreme Court of Missouri, En Banc.

March 25, 1986.

Roger G. Burnett, Liberty, R. Max Humphreys, Trenton, for plaintiffs-appellants.

Patrick A. Baumhoer, Robert E. Mannheimer, Ronald L. Anderson, Des Moines, Iowa, Jeffrey B. Rosen, Kansas City, Larry Seckington, Des Moines, Iowa, for defendant-respondent.

BLACKMAR, Judge.

The relators sue on behalf of themselves and eleven other persons who delivered grain to an elevator operated by Walker Farm Service, Inc. in Jamesport, Daviess County, Missouri. There is no assertion that the relators failed to comply with the legal requirements for maintenance of a representative suit. The defendant is the corporate surety which issued the statutory warehouseman's bond required by Chapter 411, RSMo. The trial court entered judgment for the corporate surety. The Court of Appeals affirmed in part and reversed in part. We granted transfer because of the absence of judicial precedent construing the applicable statues. We now reverse the judgment and remand for further proceedings.

The essential facts are stipulated. The claimants fall into three distinct categories, as follows:

Class I—Persons who delivered grain for storage (the latest delivery being made in June of 1980), and who subsequently agreed with the warehouseman on the price to be paid to them for sale of the grain to the warehouseman, but never received payment for their grain.

Class II—Persons who delivered grain for storage, who subsequently agreed with the warehouseman on a sale price, and who

received either checks or promissory notes for the purchase price, with the checks having been returned for insufficient funds and the notes remaining unpaid.

Class III—Persons who delivered grain to the warehouseman for sale, with a price agreed upon at the time of sale, but who never received payment. These deliveries were made in September and October of 1980.

It is stipulated, as to each claimant, that

[T]here was never an agreement in writing between [the claimant] and Walker Farm Service, Inc., in which [the claimant] was informed: (1) [s]he was relinquishing his [her] rights in the [grain], (2) Walker Farm Service, Inc. was not required to carry bond in [the grain] for the benefit of him [her], and (3) the payment for the [grain] became a common claim against Walker Farm Service, Inc.

Walker Farm Service, Inc. ceased business in November of 1980. The defendant paid the claims for grain which was admittedly in storage, but rejected the claims in the three classes described above. Defendant asserted that the grain in these three classes was not storage grain, that the warehouseman's sole duty was to pay the agreed purchase price, and that the obligation is purely a financial one which is not within the coverage of the bond.

■ The defendant surety adduced testimony of present and former officials of the Missouri Department of Agriculture to the effect that the Department had consistently construed the governing statutes in accordance with its contentions.[1] The trial court sustained objections to this testimony, which was received as an offer of proof in accordance with Rule 73.01(a)(1). The Court of Appeals considered the testimony, holding that it should have been received as evidence to show the construction placed on this statute by the officials in charge of its administration.[2] We agree with the trial court and hold that the testimony was incompetent. The statutes, and the bond executed in conformance with these statutes, set out rights and obligations of the concerned parties. The statutes do not establish the Department of Agriculture as a tribunal for the determination of claims. Its duties consist of licensing and inspecting warehouses and making sure that the required bonds are in place.[3] Statutory and contractual rights are to be adjudicated by courts, not by bureaucrats.

■ The defendants point to the provisions of Chapter 276, RSMo, requiring bonds of grain dealers, and argue that the liability the claimants assert is of the kind that should have been covered by a grain dealer's bond. Questions concerning the requirement of or liability under a grain dealer's bond are foreign to the case before us. The bond sued upon in the present case was issued in 1978, and, with modifications in amount, has remained in force ever since. Grain dealers' bonds were first required in 1977.[4] At that time, licensed warehousemen were exempt from the requirement of a grain dealer's bond.[5] Chap-

---

1. The offered testimony was not wholly satisfactory in showing a firmly established and consistent construction.

2. The defendant cites *State ex rel. Jackson County v. Public Service Commission,* 532 S.W.2d 20, 28 (Mo. banc 1975), *cert. denied,* 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976); *L. & R. Distributing, Inc. v. Missouri Department of Revenue,* 529 S.W.2d 375, 378 (Mo. 1975); and *Three Rivers Junior College District v. Statler,* 421 S.W.2d 235, 243 (Mo. banc 1967). None of these cases dealt with individual rights established by statute or contract.

3. Sections 411.030–411.271, RSMo Supp.1984. Section 411.030 gives the Department of Agriculture the power to inspect and grade grain. Sec-

tion 411.070 gives the Department the power to audit grain warehouses and the right to promulgate rules and to hold hearings concerning them. Section 411.180 gives the Department the power to inspect grain warehouses; with Section 411.271 requiring at least one such inspection of each licensed grain warehouse each year.

4. Section 276.515, RSMo 1978 (H.B. 167 § 4 (1977)).

5. Grain warehousemen were exempted under § 276.565, RSMo 1978, which read, in part:
   1. The provisions of sections 276.500 to 276.-565 shall not apply to any person, firm or corporation licensed and bonded under the

ter 276 was amended in 1980 to remove the exemption, and Chapter 411 was amended at the same time; but, we perceive nothing in the 1980 amendments which was designed to reduce the required statutory coverage of warehousemen's bonds under the latter chapter. This warehouseman was apparently required to provide a grain dealer's bond on August 13, 1980, the effective date of the 1980 amendments. The record does not show whether any such bond was provided. The question before us, however, is simply of the coverage under the warehouseman's bond. It is of no moment that the statutes may appear to require separate bonds with arguably overlapping coverage.

### Class I and II Claims

■ The grain involved in the class I and II claims described above was delivered to the warehouse for storage. The bond, pursuant to the command of the statute,[6] was conditioned as follows:

NOW, THEREFORE, if the said Principal shall faithfully perform all of the duties of a licensed public warehouseman, in conformity with the provisions of the Missouri Grain Warehouse Law (Chap. 411 RSMo) and the rules and regulations promulgated thereunder, and all additional obligations as said Principal may assume under contracts with persons storing grain in the warehouse, then this obligation shall be void, otherwise to remain in full force and effect during the term of the license and its extension or annual renewals.

The claimants argue that the "contracts with persons storing grain" include agreements to purchase, and also checks and promissory notes, as described in the stipulation. The defendant argues that this contention is too expansive and that the contracts covered are only those relating to the stored grain, such as drying or screening. Section 411.325, RSMo Supp. 1984 persuades us that the claimants' reading is

the correct one. Subsection 4 of that section reads in pertinent part as follows:

Notwithstanding any provisions of this section, a licensed warehouseman and a depositor may agree that payment or pricing of the depositor's grain be deferred to a future date. The agreement shall be in writing and shall contain a statement informing the seller that the seller is relinquishing all rights in the grain, that the warehouseman is not required to carry bond on the grain for the benefit of the seller and that the payment for the grain becomes a common claim against the warehouseman.... Grain received under a deferred payment or deferred pricing agreement under the provisions of this section shall not be deemed to be stored grain....

This provision sets out clearly the steps that must be followed in order to take stored grain out from under the coverage of the warehouseman's bond. The essential requirement is that the depositor be advised that the grain is no longer covered by the bond. It is stipulated that the required advice was not given. Coverage under the bond continued, therefore, even though there may have been a binding agreement for sale. It makes no difference whether the agreement to sell remained oral and executory, or whether a check or note was given for the purchase price. Without the required statement, only full payment of the purchase price will deprive the depositor of the protection of the bond. The bond covers some grain which the warehouseman may own, or may be obliged to purchase.

It follows that class I and II claimants are entitled to recover on the bond for the agreed purchase price of the grain they originally stored.

### Class III Claims

■ The grain which was the subject of class III claims was not delivered for storage. It nevertheless comes within the provisions of § 411.325, RSMo Supp.1984, of

provisions of a state or federal warehousing law.

6. Section 411.275(1), RSMo Supp. 1984.

which the significant portions read as follows:

      \*    \*    \*    \*    \*    \*

2. All grain received at a licensed warehouse shall be deemed to be storage grain within the meaning of this chapter, unless:

(1) Actual payment for the grain is made upon delivery to the warehouseman; or

(2) At the time of delivery of the grain to the warehouseman, the actual purchase price is established and properly documented and actual payment made within thirty days thereafter or the account is entered onto a formal settlement sheet. If an account is entered onto a formal settlement sheet, actual payment shall be made within one hundred eighty days of delivery or the account shall be moved to a formal written contract as provided for in subsection 4 of this section.

      \*    \*    \*    \*    \*    \*

The stipulation shows that the class III claimants delivered grain to the warehouse and did not receive payment, whether within 30 days or 180 days. The grain, then, is deemed to be storage grain covered by the bond. The coverage is discharged only by contemporaneous or deferred payment, or by executing a contract which complies with § 411.325.4, as set out above.[7] Since no payment was ever made, the bond coverage was continued.

The defendant argues that the elevator did not continue in business for 180 days. This circumstance, even if established, makes no difference. The bond by its terms, and by reason of the statutory requirements, continues in effect until terminated in the manner prescribed by law.[8] No such termination is shown.

The class III claimants, then, are also entitled to recover on the bond to the extent of the agreed purchase price.

*Interest*

■ The claimants are entitled to interest on their claims. Interest should run from the time demand was made. The record is not clear as to whether or when individual claimants made demand, other than by filing suit. Precise determinations may be made on remand.

■ The defendant argues that the claimants who received promissory notes should be limited to the legal rate of 9 percent, and should not recover at a higher contract rate. We disagree. The note is a collateral contract within the contemplation of § 411.275(1), RSMo Supp.1984. The bond covers because the provisions of § 411.325, RSMo Supp.1984 were not complied with.

■ The surety's liability for interest is not limited by the face amount of the bond. 72 C.J.S. *Principal and Surety* (1951). Interest is compensation for the creditor for delayed payment. The surety has the use of the money until payment is made and would receive a windfall if excused from paying interest.

*Attorney's Fees*

■ Section 411.275(6), RSMo 1984 Supp. provides in pertinent part as follows:

In all actions hereafter commenced in which judgment is rendered against any surety company on any surety bond furnished under the provisions of this section, if it appears from the evidence that the surety company has refused to pay the loss upon demand without just cause, the court in rendering judgment shall allow the plaintiff a reasonable sum as attorney's fee to be recovered and collected as a part of the costs; except, that when a tender is made by the surety company before the commencement of the action in which judgment is rendered and the amount recovered is not in ex-

---

**7.** Obligations under such formal contracts would appear to be covered by the grain dealer's bond.

**8.** Section 411.275(7), RSMo Supp. 1984.

cess of the tender, no cost shall be allowed.

This special statute is similar to the oft-construed "vexatious refusal" statute which governs insurance companies,[9] but there are differences. Because of the novelty of the point and the lack of authoritative construction, we are unwilling to say that the denial of payment was "without just cause." The plaintiffs argue that the defendant should be liable for attorneys' fees because, when first presented with the claims, it gave no reason for denial, citing *DeWitt v. American Family Mutual Insurance Company*, 667 S.W.2d 700 (Mo. banc 1984). We believe that the inquiry to the officials of the Department of Agriculture was appropriate. A mere showing of vexatious conduct is not sufficient to impose liability for attorneys' fees under this particular statute, which was not involved in *DeWitt*.

The plaintiffs also raise the question of the responsibility of the parties they represent to contribute toward their attorneys' fees. This issue is appropriate for determination by the trial court on remand, in conformance with traditional equitable principles. *See Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652 (Mo. banc 1962).

The judgment is reversed and the case is remanded to the circuit court for further proceedings consistent with this opinion.

HIGGINS, C.J., and BILLINGS, DONNELLY, ROBERTSON and RENDLEN, JJ., concur.

WELLIVER, J., concurs in separate opinion filed.

WELLIVER, Judge, concurring.

I concur. In this instance, I am convinced that the legislature, rather than the court, has created the situation that will, in the end, make the cost of grain warehouse bonds prohibitive thereby accentuating the problem sought to be resolved.

9. Sections 375.296; 375.420, RSMo 1978.