HOWARD CONSTRUCTION COMPANY,
Appellant/Cross–Respondent,

v.

TEDDY WOODS CONSTRUCTION
COMPANY, Defendant,

and

Integon Indemnity Corporation,
Respondent/Cross–
Appellant.

No. WD 43353.

Missouri Court of Appeals,
Western District.

Aug. 20, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 1, 1991.

Application to Transfer Denied
Nov. 19, 1991.

558

Gardiner Blaine Davis, Kansas City, for appellant/cross-respondent.

Richard W. Mason, Kansas City, for respondent/cross-appellant.

Before FENNER, P.J., and TURNAGE and ULRICH, JJ.

FENNER, Presiding Judge.

Integon Indemnity Corporation, (Integon) was corporate surety on three corporate surety performance and payment bonds furnished Howard Construction Company, (Howard Construction) on behalf of Teddy Woods Construction Company, (Woods Construction). Howard Construction was a general contractor on three state highway improvement projects and Woods Construction was a subcontractor for each of the three highway projects. Woods Construction defaulted on its subcontracts and Howard Construction initiated the underlying action herein in regard to Integon's obligation on its surety bonds.

Woods Construction had subcontracted with Howard Construction for landscaping on a highway project involving Route 60 in Carter County, Missouri, for the subcontract amount of $46,176.15 (subcontract A); landscaping and culvert work on a highway project involving Route 20 in Saline County, Missouri, for the subcontract amount of $246,876.20 (subcontract B); and sidewalk work, curb work, culvert work and landscaping on a highway project involving Route 20 in Lafayette and Saline Counties, Missouri, for the subcontract amount of $255,361.60 (subcontract C).

Prior to completing the work under any of its three subcontracts, Woods Construction went out of business due to its inability to obtain continued financing. On March 20, 1985, Howard Construction notified Integon that Woods Construction had defaulted on its contract obligations. At this time, Integon was already aware that Woods Construction had lost its financing and was unable to complete its subcontracts with Howard Construction.

At the time that Woods Construction went into default, all of the work on subcontract A remained to be done, and the culvert work, which was a major item of subcontracts B and C, had not been completed. Howard Construction was accountable to the Missouri Highway Department for the timely completion of the projects. The evidence was that on the project to which subcontract A related, only eight "working days" remained for the project to

be completed before Howard Construction would be assessed liquidated damages for each day until completion. Furthermore, work on the projects to which subcontracts B and C related could not proceed until the culvert work was completed.

Upon official notification, on March 20, 1985, of the default by Woods Construction, Integon put attorney Gordon Gaebler in charge of handling and monitoring the default on Integon's behalf. Thereafter, on April 4, 1985, Howard Construction entered into an agreement with another landscaping contractor for completion of the work under subcontract A. Howard Construction reacted quickly in regard to subcontract A because only eight working days remained for completion of the project to which subcontract A related. Howard Construction was ultimately charged three days of liquidated damages for untimely completion of this project.

On April 5, 1985, Teddy Woods contacted the attorney for Howard Construction, Gregory Lawhon, in order to arrange a meeting later that day to discuss information on the projects and the prospective takeover of the subcontracts by C & C Excavating, (C & C). Lawhon requested of Gaebler that Gaebler attend the meeting, but Gaebler refused to do so. No one from Integon attended the meeting.

Although Gaebler had lead Lawhon to believe that C & C Excavating had already agreed to take over the work of Woods Construction, it was learned at the meeting that C & C had not yet reached a decision on the matter. Ten days after the meeting, Lawhon learned that C & C declined the work.

On April 26, 1985, Howard Construction entered into an agreement with Viebrock Construction for completion of the culvert work under subcontracts B and C. At this time, Howard Construction was concerned that the projects to which these subcontracts related were stalled until the culvert work was completed and Integon had not provided for completion of the work. The remainder of the work under subcontracts B and C was ultimately relet in July, 1985.

On March 7, 1985, Howard Construction submitted a claim to Integon for added completion costs resulting from Woods' default. Integon rejected the claim. Howard Construction then instituted this suit to recover under Integon's bonds, claiming that Integon breached its duty under the bonds by failing to arrange promptly for the completion of the work under the subcontracts and by failing to pay the completion sub-contractors secured by Howard Construction. Integon filed a counterclaim alleging that Howard Construction, as obligee under Integon's bonds, had breached the terms of the bonds by unilaterally taking over the subcontracts and thereby excluding Integon from securing completion of the subcontract work.

While the underlying suit herein was pending and before trial, Integon gave notice to Howard Construction, pursuant to § 433.010, RSMo 1986, to require Howard Construction to commence suit against Woods Construction.[1] In compliance with said notice, Howard Construction obtained an interlocutory default judgment against Woods Construction in the principal amount of $52,034.65 and prejudgment interest in the amount of $19,681.93.

The cause came to trial in January of 1990. At the conclusion of the trial, the jury returned a verdict for Howard Construction on its claim against Integon for contract damages in the amount of $60,000.00, prejudgment interest in the amount of $12,420.00 and attorneys' fees in the amount of $50,000.00. The jury also found in favor of Howard Construction on Integon's counterclaim. The obligation of Integon for contract damages being derivative of that of Woods Construction, the trial court then revised the jury's verdict to conform to the damages assessed against Woods Construction in the interlocutory default judgment entered against Woods in the principal amount of $52,034.65 with prejudgment interest in the amount of $19,681.93. The trial court also set aside the

jury award of attorneys' fees in the amount of $50,000.

Howard Construction appeals and Integon cross-appeals. Because Integon presents a challenge to the sufficiency of the evidence, its cross-appeal is first addressed.

### INTEGON'S CROSS–APPEAL

In its appeal, Integon argues that the trial court erred by overruling its motions for directed verdict and for judgment notwithstanding the verdict because the record lacked sufficient evidence to support the verdict. Integon argues 1) that there was no substantial evidence to show that it refused or failed to undertake responsibility for completion of the subcontracts under the terms of its bonds after the default by Woods Construction; and 2) that the judgment of the court for damages was not supported by the evidence.

In deciding whether the plaintiff made a submissible case against the defendant and whether a motion for directed verdict or for judgment notwithstanding the verdict should have been granted, the appellate court reviews the evidence from a viewpoint most favorable to the plaintiff and gives the plaintiff the benefit of every reasonable inference which the evidence tends to support, disregarding all contrary evidence. *Rauh v. Interco, Inc.*, 702 S.W.2d 497, 499 (Mo.App.1985). Under this standard, a jury verdict will not be overturned unless there is a complete absence of probative facts to support the verdict. *Treon v. Hayes*, 721 S.W.2d 789, 791 (Mo.App. 1986).

Integon's obligation under its performance and payment bonds upon the default of Woods Construction was to "promptly remedy the default, or ... promptly

    1) Complete the Contract in accordance with its terms and conditions, or

    2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination

---

**1.** Section 433.010, RSMo 1986, provides, in pertinent part, that any person bound as surety for another in any bond for the payment of money, may at any time, after an action has accrued thereon, require the person having the right of action to commence suit against the principal debtor.

by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner ..."

■ The evidence showed that Howard Construction notified Integon on March 20, 1985, that Woods Construction was in default. When notice was given, time was of the essence in that the work under subcontract A had not yet been started and only eight working days remained for completion of the contract. Under subcontracts B and C, the culvert work, which was a major part of the subcontracts, was not completed and the other work on the projects could not proceed until completion of the culvert work. Not only was Howard Construction subject to liquidated damages for not completing the projects as contracted, but its performance would be taken into account when the company was under consideration for other highway projects.

Gordon Gaebler suggested to Howard Construction in March of 1985 that C & C Excavating had agreed to complete the work. However, Howard Construction learned in early April of 1985 that C & C was only considering the work and further learned in mid-April of 1985 that C & C would not complete the work. When Howard Construction learned that C & C would not complete the work, Integon was contacted and urged to secure a completing contractor quickly. When Integon had not secured a completion contractor by the end of April, 1985, Howard Construction entered into a completion agreement with the second lowest bidder on the work under subcontracts B & C. Howard Construction had previously entered into a completion contract under subcontract A, but by the end of April, 1985, Integon had not secured completion contractors on any of the subcontracts.

There was substantial evidence to show that Integon failed to promptly complete or obtain completion of the Woods Construction subcontracts. The evidence did not show that Howard Construction prevented Integon from performing its obligations under the bonds, as argued by Integon in defense of Howard Construction's claim.

■ In regard to contract damages, the liability of a surety is coextensive with that of its principal. *City of St. Louis ex rel. Esmar v. Tru–Bounce*, 562 S.W.2d 158, 162 (Mo.App.1978). The liability of the principal, Woods Construction, in the case at bar, was established by the interlocutory default judgment against Woods Construction. Howard Construction's evidence of damages at trial exceeded the amount it was awarded in judgment against Woods Construction. The judgment for contract damages as revised by the trial court was within the evidence and proper under the law. Integon's claim to the contrary is without merit.

The trial court did not err by overruling Integon's motions for directed verdict and for judgment notwithstanding the verdict for lack of sufficient evidence.

In another of its points on appeal, Integon argues that the trial court erred by refusing three instructions it offered as converse instructions to Howard Construction's verdict director for vexatious refusal to pay.

■ Missouri Approved Instructions (M.A.I.) permit verdict directing instructions of plaintiffs to be conversed in one of two ways: by using a true converse or, if appropriate, with an affirmative converse. M.A.I. 33.01 (1980 Revision). A true converse simply mirrors the language of one or more elements of the verdict director. *Gaynor v. Circle B Trucking, Inc.*, 801 S.W.2d 369, 370–71 (Mo.App.1990). In form, the true converse instruction should begin "Your verdict must be for defendant unless you believe," followed by one or more of the propositions submitted by the verdict-directing instruction. M.A.I. 33.01 [1980 Revision]. However, if the defendant elects to converse any element which is submitted in the disjunctive, he must converse all such disjunctive elements. *Id.*

■ An affirmative converse instruction must submit and hypothesize an ultimate fact issue which if true defeats plaintiff's

claim. *Tierney v. Berg,* 679 S.W.2d 919, 921 (Mo.App.1984). An affirmative converse is not to be used to submit in the affirmative the same issue that was submitted in the verdict-directing instruction. M.A.I. 33.05(1) [1988 New]. The use of an affirmative converse for this purpose is error, the prejudicial effect of which is to be judicially determined. Rule 70.02(c). In form, an affirmative converse should begin, "Your verdict must be for defendant if you believe," followed by a hypothesized ultimate issue.

■ The three converse instructions proposed by Integon were not as directed by M.A.I. The instructions were in the form of an affirmative converse, yet they merely submitted in the affirmative the same issue as submitted in Howard Construction's verdict-director for vexatious refusal to pay. The trial court properly refused these instructions.

Integon argues further that the trial court erred by failing to package the jury instructions so that a separate verdict form would be provided in relation to each of the three subcontracts.

■ Packaging is designed to simplify the submission of complex cases. In a simple case where one claim is involved, packaging is not necessary and to require its use would only serve to complicate the system. M.A.I. 2.00 C. Packaging is within the discretion of the trial court with consideration of all facts and circumstances involved in a particular case. M.A.I. 2.00 G. Without a showing of prejudice, the trial court's decision on whether to package instructions will not be disturbed. *Affiliated Foods, Inc. v. Strautman,* 656 S.W.2d 753, 759–61 (Mo.App.1983).

■ In the case at bar, Integon's obligation under the three bonds at issue was similar. The default of Integon's principal, Woods Construction, occurred at the same time and the claims and defenses presented were interrelated.

■ Furthermore, all instructions must be submitted in writing for consideration of the trial court. Rule 70.02(a). Integon submitted no proposed instructions that would have allowed the trial court to package its submission and generally, a party may not complain of the court's failure to give an instruction not properly requested. *Sullivan v. KSD/KSD–TV,* 661 S.W.2d 49, 51 (Mo.App.1983).

The trial court did not err in failing to package the instructions herein.

Integon also questions in its appeal the submissibility of Howard Construction's claim for damages for Integon's vexatious refusal to pay under the terms of its bonds. These issues are dealt with in Howard Construction's appeal.

## HOWARD CONSTRUCTION'S APPEAL

In the first point of its appeal, Howard Construction argues that the trial court erred by setting aside the jury's award of attorney fees as damages for Integon's vexatious refusal to pay the obligation under its bonds. In this regard Integon argues 1) that the evidence did not support an award for vexatious refusal to pay; and 2) that Howard Construction failed to establish the reasonable value of and necessity for the services of its attorneys.

■ To support imposition of an award for vexatious refusal to pay proceeds of an insurance policy, it must be shown that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person. *DeWitt v. American Family Mutual Insurance Company,* 667 S.W.2d 700, 710 (Mo. banc 1984); §§ 375.296 and 375.420, RSMo 1986. Although the statutory language providing penalties for vexatious refusal to pay makes reference to policies of insurance, it also encompasses contracts of suretyship. *Housing Authority of City of Clinton v. Baumann,* 512 S.W.2d 436, 440 (Mo.App. 1974). The existence of a litigable issue, either factual or legal, does not preclude a penalty for vexatious refusal to pay insurance proceeds where there is evidence the insurer's attitude was vexatious and recalcitrant. *Id.* Furthermore, direct and specific evidence to show vexatious refusal to pay insurance proceeds is not required for

an award of attorney fees as a penalty; the jury may find vexatious refusal upon a general survey and consideration of the whole testimony and all the facts and circumstances of the case. *Id.*

■ The evidence showed that Integon did not promptly complete or secure completion of the work under the subcontracts of its principal, Woods Construction. On May 10, 1985, Integon advised Howard Construction by letter that in Integon's opinion Howard Construction had waived any benefit under the bonds by usurping Integon's efforts to obtain completion contractors. The letter represented that at the time Howard Construction relet the work, Integon had already secured two completion contractors; being General Contractors, Inc. and Bill Weeks Construction Company. However, there was evidence at trial that Weeks Construction had no experience in highway construction and that General Contractors had not been contacted by Integon. The letter also threatened suit against Howard Construction for lost profit under the subcontracts.

An expert witness on surety practices testified for Howard Construction that Integon's letter of May 10, 1985, was vexatious and without reasonable cause under the circumstances.

When Howard Construction later submitted a claim to Integon for added expenses caused by the default, Integon responded by letter which read, in pertinent part, as follows:

> Any loss sustained by Howard Construction Company could only result through an intentional inflating of the completion costs.
>
> Accordingly, your claims are not only denied but we look to you for recoupment of the anticipated projects [sic] allocable to each project.
>
> .    .    .    .    .
>
> Based on the projected costs on these projects and the substantial profits it is clear that Howard Construction Company seized upon this opportunity to take over favorable work for its own benefit and gain.

Howard Construction's expert on surety practices stated that in his opinion this letter was also vexatious and that Integon did not attempt in good faith to perform its obligations under the bonds. The expert further stated that Integon's refusal to pay anything on the claims over a period of five years up to trial, without reasonable cause or excuse, was not supported under the language of the bonds.

Howard Construction's claim for vexatious refusal to pay was supported by the evidence. Furthermore, the trial court's conclusion that the interlocutory default judgment against Woods Construction was determinative of the extent of Integon's liability for all damages was erroneous.

■ While the entry of a judgment against the principal is determinative of the extent of liability of the surety under the bond and for interest through the date of judgment, such a judgment does not dispose of the issues of the liability of the surety for vexatious delay and the amount of attorney fees. *City of St. Louis ex rel. Esmar v. Tru–Bounce,* 562 S.W.2d at 162. The interlocutory judgment against Woods Construction did not preclude Howard Construction from pursuing its claim against Integon for attorney fees as a result of Integon's vexatious refusal to pay.

The evidence at trial on the issue of attorney fees was that Howard Construction had paid $39,924.88 in attorney fees which payment did not include trial time or preparation for trial. Fee bills on the attorney fees paid were admitted in evidence and Howard Construction requested additional attorney fees for a total amount of $50,000.00. Integon argues that the evidence at trial did not support an award of attorney fees in the amount of $50,000.00.

■ When attorney's fees are recoverable by contract or statute counsel is entitled to a reasonable fee unless otherwise specifically provided. *O'Brien v. B.L.C. Insurance Company,* 768 S.W.2d 64, 71 (Mo. banc 1989). In determining the reasonable value and amount of attorney fees recoverable, there are many factors appropriate for consideration. The rates

customarily charged by the attorneys involved and by other attorneys in the community for similar services are relevant factors. *Id.* Time taken is a consideration as is the nature and character of the services rendered, the nature and importance of the matter in which services are rendered, the degree of responsibility imposed upon the attorney, the value of the property or money involved, the degree of professional ability called for and used, and the result. *Ozark Production Credit Association v. Walden,* 695 S.W.2d 919, 921 (Mo.App. 1985). The trial court is an expert on the value of legal services, *Id.* at 922, however, a jury is not. In the case at bar, the jury was the finder of fact on the question of attorney fees through trial.

The question of attorney fees for vexatious refusal to pay was properly submitted to the jury in the case at bar, but there was no expert testimony upon which the jury could base a finding as to the reasonable value of the attorney fees requested. However, the evidence did show that $39,924.88 in attorney fees had been paid.

Evidence of payment of professional services is substantial evidence that the charges incurred were reasonable and necessary. *Wright v. Fox–Stanley Photo Products, Inc.,* 639 S.W.2d 407, 410 (Mo. App.1982). While *Wright* concerned payment of fees for medical services, the considerations are the same in regard to legal services. The evidence at trial supported the award of attorney fees to the extent of the fees paid in the amount of $39,924.88.

The trial court erred by setting aside the award of attorney fees in total.

In its second point on appeal, Howard Construction argues that the trial court erred by not allowing interest from the time of the interlocutory judgment against Woods Construction through the date of judgment at trial against Integon.

As with contract damages, the liability of a surety for interest is coextensive with that of its principal. *City of St. Louis ex rel. Esmar v. Tru–Bounce,* 562 S.W.2d at 162. The liability of the principal, Woods Construction, for contract damages, was fixed in the amount of $52,-034.65, in the interlocutory default judgment entered on June 1, 1989. Accordingly, the trial court revised the jury's award of contract damages in the amount of $60,-000.00 to the amount of $52,034.65, because Integon's liability for contract damages could not exceed the liability of its principal, Woods Construction. The trial court also limited the amount of prejudgment interest to the sum of $19,681.93 as entered against Woods Construction in the interlocutory default judgment of June 1, 1989. By so doing, the trial court denied Howard Construction interest for the period between the interlocutory default judgment and judgment against Integon. Pursuant to § 408.020, RSMo 1986, Howard Construction is entitled to interest under the circumstances herein at the rate of 9% from the date of the interlocutory default judgment against Woods Construction. To allow otherwise would be to grant Integon a windfall by relieving it of interest for the period between June 1, 1989 and the date of judgment against Integon. A surety is not entitled to a windfall by being relieved of interest on the amount due under its bonds. *State ex rel. Neese v. IGF Insurance Co.,* 706 S.W.2d 856, 860 (Mo. banc 1986).

The trial court erred by limiting interest to the date of the interlocutory default judgment rather than allowing interest to the date of judgment against Integon.

The judgment of the trial court setting aside the jury verdict is reversed and this cause is remanded with directions that judgment be entered in favor of Howard Construction and against Integon for contract damages in the amount of $52,034.65 plus interest to June 1, 1989, in the amount of $19,681.93. In addition, Howard Construction is to be awarded interest at the rate of 9% per annum on the total amount of said judgment, $71,716.58, from June 1, 1989, to the date of judgment entry pursuant to this opinion. The trial court is further directed to award Howard Construction attorney fees against Integon, through trial, in the amount of $39,924.88.

The judgment denying Integon's counter-claim is affirmed.

All concur.